A. 118, 34 Am. St. Rep. 448, upon which the learned justice at Special Term relied, as appears from his memorandum in denying the motion, are not controlling, nor do I think they have any application to the question presented. The case is quite similar to Allentown F. & M. Works v. Loretz, 16 App. Div. 72, 44 N. Y. Supp. 689. There the plaintiff, a Pennsylvania corporation having its place of business in that state, instituted two actions, one in equity and the other at law, in the state of Massachusetts, to enforce a claim upon which it thereafter brought two actions in the state of New York. After issue had been joined in the New York actions, the defendants moved to stay proceedings therein until after trial and determination of the actions brought in Massachusetts. It was held that an order staying proceedings in the New York actions was properly granted.

In Oppenheimer v. Carabaya Rubber & Nav. Co. (No. 1) 145 App. Div. 830, 130 N. Y. Supp. 587, this court held that an order denying a motion to stay proceedings in an action brought in this state should be reversed, and a motion granting such stay pending the trial of an action brought in England should be granted.

[2] It is no answer to the claim that a stay should be granted to say that the defendant could set up in its answer the pendency of the other action. In Douglass v. P. Ins. Co., supra, it was held that the pendency of an action in a foreign jurisdiction could not, as a general rule, be pleaded in abatement of an action instituted in this state.

The order appealed from, therefore, is reversed, with $10 costs and disbursements, and the motion granted, staying the trial of this action pending the discontinuance, or trial and final disposition, of the Pennsylvania action, with $10 costs. All concur.

---

DE ROCHEMONT v. BOSTON & M. R. CO.

(Supreme Court, Appellate Division, First Department.    February 4, 1916.)

1. CARRIERS ☞153—LIMITING LIABILITY—AGREED VALUE—CARMACK AMENDMENT.

   Under the Interstate Commerce Act (Act Cong. Feb. 4, 1887, c. 104, § 20, 24 Stat. 379), as amended by the Carmack Amendment (Act Cong. June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [U. S. Comp. St. 1913, § 8592]), a bill of lading issued upon receiving an interstate shipment of household goods for carriage at a lower rate on an agreed value not exceeding $10 per 100 pounds, which classification was explained to the shipper who elected such rate, was effective to limit the shipper's recovery.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 687–690; Dec. Dig. ☞153.]

2. CARRIERS ☞94—ACTION FOR LOSS OF GOODS—SUFFICIENCY OF EVIDENCE—BILL OF LADING.

   In a shipper's action to recover $7,000 damages for the defendant's failure to deliver a wooden box weighing 200 pounds, containing sketches, drawings, etc., received for interstate carriage, defended on the ground that the bill of lading limited the value to $10 on each 100 pounds, evidence *held* insufficient to show that the box in question was separated from the other boxes in the shipment, or was intentionally excluded from the

bill of lading when it was made out, and to show that all the goods, including the lost box, were delivered as a single shipment, intended to be covered by the bill of lading issued.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. ☜94.]

Page and Laughlin, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Ruth De Rochemont against the Boston & Maine Railroad Company. From a judgment for defendant after trial by the judge, a jury having been waived, plaintiff appeals. Affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and PAGE, JJ.

John Godfrey Saxe, of New York City, for appellant.
Madison G. Gonterman, of New York City, for respondent.

McLAUGHLIN, J. The action was brought to recover $7,000, as damages for the defendant's failure to deliver a wooden box weighing 200 pounds, containing sketches, drawings, notes, etc., valued at that amount, alleged to have been delivered to the defendant for shipment from Portsmouth, N. H., to New York City. The fact is not disputed that the box in question was delivered to the defendant as a common carrier, and that it failed to deliver the same, either to the consignee or to the plaintiff. At the conclusion of the trial the court held that the plaintiff's recovery must be limited, irrespective of the value of the contents of the box, to the sum of $20 by reason of a provision in the bill of lading given by the defendant, which, in case of loss, prohibited a recovery in excess of $10 on each 100 pounds. Judgment was accordingly entered in plaintiff's favor for that sum, from which she appeals.

There is little or no conflict in the evidence as to the material facts involved. In September, 1911, the plaintiff, who resided in New York City, was at her father's home in Portsmouth, N. H., and as she was about to return to her home she prepared various boxes and parcels, consisting chiefly of household goods, to be forwarded to her there by freight. In addition to the box in question there were four other wooden boxes and a paper box containing newspapers, making six boxes in all. The boxes and other articles, properly tagged with the name and address of the consignee, were delivered at the same time to the defendant at its freight house at Portsmouth by an employé of the plaintiff's father, who then had with him a so-called bill of lading, which had been prepared by the plaintiff for the goods. This bill of lading, however, was not accepted by the defendant, and the employé shortly thereafter returned it to the plaintiff's father without making any arrangement for the shipment. On the same day, after the plaintiff had taken a train for New York City, her father went to the defendant's freight office, obtained a bill of lading, and paid the freight. The defendant's schedule of rates filed with the Interstate Commerce Commission for household goods varied according to the valuation given, there being a lower rate for goods of an agreed value not exceeding $10 per 100 pounds. This classifi-

cation was explained by one of the defendant's agents to plaintiff's father, after which he elected to ship the goods at the lower rate. The following statement was thereupon stamped upon the bill of lading:

"For the purpose of enabling the carrier to apply the proper published rate as explained in its classification and tariffs, I hereby declare that the value of the property herein described does not exceed ten (10) dollars per hundred (100) pounds, and that in case of loss or damage thereto I will not assert claim against the carrier on a higher basis of value."

This statement was signed by the plaintiff's father and by a representative of the railroad company. The trial court held that its effect was to limit the plaintiff's recovery for the missing box to the sum of $20.

[1, 2] If the box were shipped under the bill of lading, then the decision of the trial court is undoubtedly correct. Pierce Co. v. Wells Fargo & Co., 236 U. S. 278, 35 Sup. Ct. 351, 59 L. Ed. 576. Indeed, this is not disputed by the appellant. She, however, insists, and a recovery is claimed upon that ground, that the missing box was not covered by the bill of lading. The bill of lading specifies 15 pieces; the only reference to boxes being an item of "5 boxes, H. H. G.," the abbreviations, admittedly, standing for household goods. As already stated, there were 6 boxes in the shipment as delivered to the defendant, and the original entry on the bill of lading was "6 boxes H. H. G.," but a line had been drawn through the figure 6 and the figure 5 written in. It was conceded that the body of the bill of lading was in the handwriting of an agent of the defendant, and the court found that he made the alteration referred to before the bill of lading was delivered.

After a careful consideration of the record, I am unable to find any evidence whatever to sustain the finding, unless it be the possible similarity of the figures. The agent who made out the bill of lading is no longer in the employ of the defendant and was not produced by either party, and the plaintiff's father died some time before the trial of the action. The witnesses who handled the bill when the shipment was made and delivered were unable to state whether or not the alteration was then upon it, and the possible similarity of the figures is not, in my opinion, sufficient to support a finding that the alteration was made by the same person who made out the body of the bill of lading, and before the same was delivered. But, assuming that the possible similarity of the figures, taken in connection with the making and delivery of the bill of lading, is sufficient to sustain such finding, I do not think it aids the appellant, since no inference, either favorable or unfavorable to her, can be drawn from the unexplained fact that a line had been drawn through the figure "6" and the figure "5" inserted. The determination of the question presented must, in any event, be predicated upon the fact that only 5 boxes were enumerated in the bill of lading, entirely irrespective of the alteration. If this be true, then the plaintiff is in this situation, she delivered 6 boxes to the defendant for shipment, and it billed and delivered only 5.

It is from this fact, and this fact alone, that she claims, as she must, that the missing box was either intentionally excluded from the shipment or lost by the defendant before the bill of lading was made out, and that it only covered 5 of the boxes actually delivered. There is no evidence in the record to show that the missing box was not in the possession of defendant with the rest of the goods when the bill of lading was made out and delivered. The bill of lading does not identify in any way the 5 boxes enumerated. The total weight of the shipment was given as 1,050 pounds. The missing box weighed 200 pounds, and was by far the heaviest of the lot. Yet no attempt was made to show what the weight of the rest of the goods was from which it might have been determined whether the goods covered by the bill of lading included or excluded the box in question. It is not claimed that any other bill of lading for the box was issued, or asked for. The shipment being interstate, the federal statutes required the defendant to issue a bill of lading for it. Adams v. Croninger, 226 U. S. 491, at page 504, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257. Of this the plaintiff had constructive, and evidently actual, knowledge, since she prepared a bill of lading for the goods herself.

The defendant's schedule of rates, as we have already seen, varied according to the nature and value of the shipment, and there is no evidence that anything was ever done to forward this box, unless it was covered by the bill of lading, which concededly covered all the rest of the goods shipped. Unless, therefore, this box were shipped under and subject to the terms of the bill of lading given, it was never shipped at all, and, so far as the record shows, no contract or negotiations for its shipment were entered into. Upon this evidence, or lack of it, the trial court found that the bill of lading was intended to cover all the goods delivered to the defendant, including the missing box, which was shipped subject to its terms, and I am unable to see how a different decision could have been reached. The most plausible theory advanced by the plaintiff is that the box was lost between the time when it was delivered to the defendant and the time when the bill of lading was signed; that the bill of lading was made out from the so-called bill of lading which she prepared, showing 6 boxes, which was changed to 5 when the boxes, then in the possession of the railroad company, were counted. Upon that theory it is possible the plaintiff might be entitled to recover the value of the contents of the lost box.

In that connection, it may be assumed, for the purpose of the discussion, that the defendant's liability as a carrier commenced when the goods were delivered to it by the employé of the plaintiff's father for immediate shipment, even though it was then understood, as the testimony showed, that the freight was to be paid and the bill of lading issued before actual shipment. It may likewise be assumed, for the same purpose, that between that time and the time when the bill of lading was made out and signed the defendant was subject to a common-law liability. In that case, if the box had been lost during

that time, it was not covered by the bill of lading and the defendant would be liable for the full value of its contents. The difficulty, however, with these assumptions, is that the facts necessary to support the plaintiff's theory rest not upon evidence, but entirely upon conjecture.

Plaintiff also suggests another theory, inconsistent with the one just referred to, that her father may have intentionally excluded this box from the rest of the shipment. But this theory is based, like the other one, not upon evidence, but upon conjecture. The so-called bill of lading made out by the plaintiff was not produced or accounted for, although it appeared from her testimony that it was in her possession about the time the goods were delivered in New York. There is not a particle of evidence as to whether the lost box was with the rest of the goods when the bill of lading was made out and signed, or as to what transpired between plaintiff's father and the agent at that time.

While the theories suggested by the plaintiff may present a possible explanation for the lost box, they are no more persuasive than another which might be suggested, viz., that defendant's agent, finding that one of the 6 boxes was a paper box, containing only newspapers, decided it ought not to be classed with the 5 wooden boxes containing household goods, and for that reason altered the bill of lading, and either neglected to list the paper box elsewhere on the bill, or tied it up with some of the other articles, some of which were only roughly fastened together.

When the evidence adduced at the trial is considered, all that is established is that 6 boxes were delivered to the defendant, which, for some unexplained reason, issued a bill of lading calling for only 5. There is no way of determining from the evidence, or from the bill, which 5 of the 6 boxes were referred to therein. No claim is made that any arrangements were made, suggested, or contemplated by the parties for shipping any one of the 6 boxes separately. Defendant having delivered to the plaintiff, at the place to which the goods were consigned, only 5 boxes, is, of course, liable for failing to deliver the missing box. But it cannot be held liable beyond the amount stipulated in the bill of lading, unless we are prepared to hold that the box in question was separated from the rest of the shipment, or was intentionally excluded from the bill of lading when it was made out. There is no evidence whatever in the record upon which either of these findings could be made; on the contrary, the evidence conclusively establishes that all of the goods, including the box which has been lost, were delivered to the defendant as a single shipment, and that the parties intended and supposed all the goods so delivered were covered by the bill of lading issued.

I am of the opinion that the judgment is right, and should be affirmed, with costs. So much of the finding of fact No. XV as finds that the defendant's agent inserted in the bill of lading "an item reading 5 boxes H. H. G." is reversed, on the ground that the evidence is insufficient to sustain the same, and so much of the finding of fact No. XI in the decision as finds that the defendant's agent

inserted in the bill of lading "an item 5 H. H. G." is also reversed for a similar reason.

CLARKE, P. J., and SCOTT, J., concur.

PAGE, J. I dissent. Six boxes were delivered to the railroad company for shipment. It only shipped and delivered five to the plaintiff. The failure of the defendant to deliver to plaintiff all the boxes delivered to it for shipment is prima facie evidence that what was not delivered was lost through its negligence; and as the missing box was not included in the bill of lading, it would appear that the box was lost intermediate the delivery to the company for shipment and the actual shipment. Therefore, the defendant was subject to a common-law liability to pay the value of the contents of the box. I think the plaintiff made out a prima facie case for a recovery, and that the defendant did not overcome it by any competent proof. In my opinion, the judgment should be reversed and a new trial granted.

LAUGHLIN, J., concurs.