IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

MIDDLE DIVISION.

NASHVILLE, DECEMBER TERM, 1916.

LOUISVILLE & N. R. Co. *v.* J. R. HOBBS.

(*Nashville.* December Term, 1916.)

1. **CARRIERS. Limiting liability. Interstate shipment.**
   Where alternate rates, fairly based on valuation, are offered for an interstate shipment, the carrier may limit its liability by special contract. (*Post, pp.* 514-516.)

Cases cited and approved: George N. Pierce Co. v. Wells, F. & Co., 236 U. S., 278; Louisville & N. R. Co. v. Montgomery, 135 Tenn., ——; Cincinnati, etc., R. Co. v. Rankin, 241 U. S., 319.

2. **CARRIERS. Interstate shipment. Schedules. Notice. Limitation of liability.**
   A shipper suing on an interstate shipment contract for injuries to a shipment of horses is chargeable with notice of the contents of schedules filed by the carrier with the Interstate Commerce Commission and duly published, where the shipment contract refers to alternating rates established by the carrier and sets forth the shipper's acceptance of the lower rate because of embodied limitations on the carrier's liability. (*Post, pp.* 516-518.)

136 Tenn.] (512)

Case cited and distinguished: Kansas City So. Ry. Co. v. Carl, 227
U. S., 639.

3. **CARRIERS.**   Interstate shipment.   Schedules of rates.

In an action for injuries to an interstate shipment of horses, a
provision of the shipment contract limiting the carrier's liability
and referring to alternative rates established *prima facie* that
the carrier had complied with the requirements of the act of
Congress respecting the filing and publication of its schedules
of rates. (*Post, pp.* 518, 519.)

Cases cited and approved: Louisville & N. R. Co. v. Maxwell, 237
U. S., 94; Boston & M. R. Co. v. Hooker, 233 U. S., 97.

---

## FROM WILSON.

---

Appeal from the Circuit Court of Wilson County.
—JNO. E. RICHARDSON, Judge.

LILLARD THOMPSON, J. H. CAMPBELL, JNO. BELL
KEEBLE, ED. T. SEAY and ALBERT W. STOCKWELL, JR.,
for appellant.

W. R. CHAMBERS, for appellees.

MR. JUSTICE WILLIAMS delivered the opinion of
the Court.

This is an action instituted by Hobbs against the
railroad company to recover damages for alleged
injuries to several horses shipped by him from East
St. Louis, Ill., to Lebanon, Tenn.

Hobbs recovered a judgment in the circuit court,
and that judgment was affirmed by the court of civil

appeals.    The company petitions this court for a writ of *certiorari* in order to its relief.

The live stock was transported under a through bill of lading, the terms of which are to govern the decision of the case.

The bill of lading provided for limited liability on the part of the carrier—$100 for each horse—and for a release of the carrier from all liability for loss or damage sustained  to said animals from any cause or thing whatever not resulting from the negligence of the agents or servants of said carrier.

The other clauses usually incorporated in such ·limited liability contracts appear.  Among them are the following:

"The carrier will carry live stock at the rate established by it therefor, and where certain risks, duties and liabilities are assumed by the shipper, as hereinafter specified, will carry such live stock at greatly reduced rates.

"In the present instance the shipper elects to avail himself of said reduced rate, etc.  .   .   .

"The carrier agrees that the freight rate thereon from point of shipment to destination shall not exceed the reduced rate of $70 per car twenty thousand pounds."

The determination of liability under this contract of shipment is to be governed by the Federal decisions which are to the effect that where alternate rates, fairly based upon valuation, are offered, a railroad may limit its liability by special contract.

*George N. Pierce Co.* v. *Wells, F. & Co.*, 236 U. S., 278, 283, 35 Sup. Ct., 351, 59 L. Ed., 576, 581; *Louisville & N. R. Co.* v. *Montgomery*, 135 Tenn.—,188 S. W., 1146.

Hobbs testified in the trial below that he had shipped live stock over the company's railroad from East St. Louis to Lebanon for two years; that he estimated that he had shipped from twenty to twenty-five carloads of stock during that period; that the agents of the company had never notified him that it had more than one rate for the transportation of live stock; and that he had always paid the same rate, never having heard of but one rate.

The insistence for Hobbs is that he is by the Federal decisions left the right to show by this proof that the attempted limitation in the contract was ineffectual and that the shipment contract is one of common-law liability on the part of the carrier. The ruling of the supreme court of the United States in the recent case of *Cincinnati, etc., R. Co.* v. *Rankin*, 241 U. S., 319, 36 Sup. Ct., 555, 60 L. Ed., 1022, is relied upon by counsel of both parties, and the proper construction of the opinion in that case will determine the disposition of this case.

The bill of lading refers to alternate rates established by the carrier, and sets forth the shipper's acceptance of the lower rate granted because of the embodied limitations on the carrier's liability. We construe this to refer to an establishment of rates in accordance with law in schedules filed by the car-

rier, and to mean that the shipper was notified that thereby that there were two rates applicable in the alternative.

May a plaintiff suing on such contract be heard to say that he did not know what was contained in the schedules, if such are found to be filed with the Interstate Commerce Commission and published as the laws of the Congress require?

We construe the Rankin Case not to have the meaning assigned it by the court of civil appeals. We think its ruling did not save to the plaintiff the right to contradict what is proved, or must be presumed, to be in such schedules by showing that he was not in fact offered a choice of rates, and of contracts responding thereto.

The court in that case said:

"We cannot assent to the theory apparently adopted below that the interpretation and effect of a bill of lading issued by a railroad in connection with an interstate shipment present no Federal question unless there is affirmative proof showing actual compliance with the interstate commerce act. It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law. Such a carrier must comply with strict requirements of the Federal statutes or become subject to heavy penalties, and in respect of transactions in the ordinary course of business it is entitled to the presumption of right conduct. The law 'presumes

that every man, in his private and official character, does his duty, until the contrary is proved; it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption, according to the maxim, *omnia praesumuntur rite et solemniter esse acta, donec probetur contrarium.'* . `. .

·''The essential choice of rates must be made to appear before a carrier can successfully claim the benefit of such a limitation and relief from full liability; and, as no interstate rates are lawful unless duly filed with the Commission, it may become necessary for the carrier to prove its schedules in order to make out the requisite choice. But where a bill of lading, signed by both parties, recites that lawful alternate rates based on specified values were offered, such recitals constitute admissions by the shipper and sufficient *prima-facie* evidence of choice. If in such a case the shipper wishes to contradict his own admissions, the burden of proof is upon him.''

In *Kansas City Southern R. Co. v. Carl,* 227 U. S., 639, 33 Sup. Ct., 391, 57 L. Ed., 683, it was said:

''The valuation declared or agreed upon, as evidence by the contract of shipment upon which the published tariff rate is applied, must be conclusive in an action to recover for loss or damage a greater sum. . . . The valuation the shipper declares determines the legal rate where there are two rates based upon valuation. He must take notice of the

rate applicable, and actual want of knowledge is no excuse."

Since the recitals of the contract here involved made a *prima-facie* case that the carrier had complied with the requirements respecting the filing and publishing of its schedules of rates, the lower courts should have proceeded on the basis that such filing and publication was a fact. What then was the effect of that fact in respect to importing notice to the shipper that he has a choice as between rates and grades of contractual liability on the carrier's part?

We must assume that the published schedules showed the relation of the two rates to the two kinds of contract—common-law and limited-liability. In other words, the schedules in showing the rates necessarily disclosed to the shipper the choice as between the two kinds of contract; and it was not open to the shipper to prove that he did not know or understand what the schedules contained in reference to the rates applicable to the respective liability contracts. We understand the ruling in the Rankin Case to save to the shipper the right to show that there was in fact no filing or publication, any contract recitals on his part to the contrary notwithstanding, the burden of proof in doing so being upon him; not that he may show that there was no offer of choice of contracts, as against the showing of the schedules, so established *prima facie.* The shipper's knowledge of the contents of the schedule is conclusively presumed. *Louisville & N. R. Co.* v. *Max-*

*well,* 237 U. S., 94, 35 Sup. Ct., 494, 59 L. Ed., 853, L. R. A., 1915E, 665.

If the contrary view be the correct one, an easy way is open for evasion and preferential treatment of shippers by means of a withholding, as a matter of fact, from some of them the existence or offer of alternate rates and contracts, while disclosing same to others; whereas, it was the purpose of the acts of Congress "to have but one rate, open to all alike, and from which there could be no departure." *Boston & M. R. Co.* v. *Hooker,* 233 U. S., 97, 110-113, 34 Sup. Ct., 526, 58 L. Ed., 868, L. R. A., 1915B, 450, Ann. Cas., 1915D, 593.

The gist of the decision in the Rankin Case is, we think, found in the sentence, "Such recitals constitute admissions by the shipper and sufficient *prima-facie* evidence of choice," in that the schedules are presumed to have been filed rendering it unnecessary for the carrier "to prove its schedules in order to make out the requisite choice." The burden cast by the recitals upon plaintiff was in respect of a distinct matter—that of proving, in case he wished to contradict them, that the carrier had not complied with the law by filing and publishing the schedules of rates, etc.

Bound as we are by this Federal decision, construed as we think it must be in fairness to the ultimate tribunal which announced it, we are constrained to reverse the judgment of the court of civil appeals, and to remand the case for a new trial.