TENNESSEE CENTRAL RAILWAY COMPANY, Plaintiff in Error, v. J. W. RUSSELL et al., Defendants in Error.

Middle Section. May 28, 1932.

Petition for Certiorari denied by Supreme Court, January 7, 1933.

R. F. Jackson and Walter Stokes, both of Nashville, for plaintiff in error.

James A. Newman, of Nashville, for defendants in error.

DeWITT, J. This action by J. W. Russell and his wife against the Tennessee Central Railway Company, for damages for non-delivery of two trunks containing goods, was tried before the Circuit Judge without a jury and resulted in a judgment for the plaintiffs for $450 and costs. The assignments of error involve two propositions:

First, that the plea that the suit was barred by limitation should have been sustained.

Second, that if the suit is not barred by limitation, the plaintiffs could not recover more than the agreed valuation of $29.30—the value of 293 pounds at ten cents per pound.

In January, 1923, the plaintiffs, who formerly resided at Neptune, in Cheatham County, but were residing in Brooksville, Florida, procured their son-in-law, R. J. Stone, of Neptune, to make to them at Brooksville a shipment of personalty consisting of one crate of china, one couch, and three trunks containing tableware, linen goods, quilts, jewelry, pictures, bed clothing, and other articles. On January 8, 1923, all of this personalty was delivered by Stone to the agent of the Railway Company at Doddsville, Tennessee, for such shipment. One of the trunks, the crate of china and the couch arrived at Brooksville on February 6, 1923, and the plaintiffs were notified immediately of their arrival, but they did not receive them until March 12, 1923, at the same time paying the freight charges on the entire shipment. The other two trunks never reached Brooksville and were lost. They were "checked short" at Chattanooga. No trace of them could ever be found.

The reason given by the plaintiffs for waiting until March 12th to take the goods which did arrive was that the agent of the terminal carrier requested them to allow the goods to remain in the freight house without further charge, with the hope that the missing trunks would soon be found and all the goods be delivered together.

This action was brought on February 23, 1925. The bill of lading contained the provision: "Suits for loss, damage or delay shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed." The Railway Company insists that February 6, 1923, the date of the actual arrival of some of the goods, must be taken as the reasonable time for delivery, and that as the suit was not brought for two years and seventeen days thereafter, it was barred. We are of the opinion that the period until March 12, 1923, could be treated as a reasonable

time for delivery of the missing trunks under all the circumstances. But the aforesaid provision of the bill of lading did not contain the applicable limitation. The governing statute, which overrode such stipulation (Ry. Co. v. Gardiner, 273 U. S., 280, 71 L. Ed., 644; Ry. Co. v. Bewsher, 6 Fed. (2d), 947) was section 20, paragraph 11, of the Interstate Commerce Act (U. S. Code of 1926, p. 1670) which is as follows:

"That it shall be unlawful for any such common carrier to provide by rule, contract, regulation or otherwise, a shorter period for giving notice of claims than ninety (90) days, for the filing of claim than four (4) months, and for the institution of suits than two (2) years, such period of institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

On November 18, 1924, the counsel for the Railway Company notified counsel for the claimants, by letter, as follows:

"I do not see how you can make claim for more than $2.93 in view of the fact that the original bill of lading including the trunks in question, provided on its face that the value should not exceed 10 cts. per 100 lbs. The two trunks weighed 293 lbs. and therefore the claim should only be for $2.93. This amount I am willing to pay.

"I feel sure that since your attention has been called to this provision in the bill of lading and you have examined authorities, you will agree with me."

On December 3, 1924, counsel for the Railway Company sent to the claimant's counsel another letter, as follows:

"I have your letter of Nov. 26th and in examining the file before forwarding to you, discovered that I was mistaken in my letter of Nov. 18th in stating that the bill of lading provided on its face that the value should not exceed 10 cts. per 100 lbs., whereas it is 10 cts. per pound. I do not know how I made this mistake, but I did, and hence the claim should be for $29.30 (instead of $2.93) which amount we are willing to pay.

"I thought best to write you of the mistake and give you an opportunity to see what your client is willing to do."

Thereafter the Railway Company did not indicate any willingness to consider any proposition that it pay more than $29.30, although counsel for the claimants sought to obtain a settlement for a larger sum of money. A reasonable interpretation is that on December 3, 1924, the Railway Company gave notice in writing that it had disallowed all of the claim over $29.30; and therefore the period of limitation did not begin to run until that date.

The second proposition rests upon the recital in the bill of lading, "Value not to exceed 10 cents per lb." Mr. Stone acted as agent of the plaintiffs in shipping the goods. He made no declaration to the carrier's agent as to the value. He testified: "I recall that there was something on the bill of lading as to the value, but nothing was said about it." The carrier's agent testified that he inserted the aforesaid valuation in the bill of lading of his own account; that nothing was stated by Mr. Stone; that Stone did not get the bill of lading from him for several months after the shipment was made. He further said: "We always bill out everything at ten cents unless stated by the shipper at a higher rate. We always put that on all way bills unless the shipper states the value and pays a higher rate." He did not request of, or receive from Stone a written statement of the value of the goods shipped. He made the valuation according to his custom. He said that he did not believe that Stone noticed the provision of valuation. The bill of lading contained the following provision:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona-fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

Under the Second Cummins Amendment to the Interstate Commerce Act, as to the kind of property herein involved, such limitations of liability are valid when expressly authorized by the Interstate Commerce Commission (U. S. Code of 1926, p. 1670). That such authority has been given is presumed, for it cannot be assumed that the carrier was conducting its affairs in violation of law. C. N. O. & T. P. R. Co. v. Rankin, 241 U. S., 319, 60 L. Ed., 1022, L. R. A., 1917A, 265; Am. Ry. Exp. Co. v. Lindenburg, 260 U. S., 584, 67 L. Ed., 414.

It is not essential that the shipper sign the receipt so limiting the liability of the carrier, but when he receives and acts upon it he becomes bound by it, as it is the written agreement of the parties. Am. Ry. Exp. Co. v. Lindenburg, supra. His knowledge of its contents will be presumed. Can v. T. & P. R. Co., 194 U. S., 427, 48 L. Ed., 1053; Kan. Cy. So. Ry. Co. v. Carl, 227 U. S., 639, 57 L. Ed., 683. In the leading case of Adams Exp. Co. v. Croninger, 226 U. S., 491, 57 L. Ed., 314, 44 L. R. A. (N. S.), 257, it was declared:

"The receipt which was accepted showed that the charge made was based upon a valuation of $50 unless a greater value should

be stated therein. The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the Commission."

However, these are the applicable rules where the shipper has actually received the written contract for shipment. In Union v. Pacific R. Co. v. Burke, 255 U. S., 317, 65 L. Ed., 656, it was said:

"In many cases, from the decision in Hart v. Pennsylvania R. Co., 112 U. S., 331, 28 L. Ed., 717, 5 Sup. Ct. Rep., 151, decided in 1884, to Boston & M. R. Co. v. Piper, 246 U. S., 439, 62 L. Ed., 820, 38 Sup. Ct. Rep., 354, Ann. Cas., 1918E, 469, decided in 1918, it has been declared to be the settled Federal law that if a common carrier gives to a shipper the choice of two rates, the lower of them conditioned upon his agreement to a stipulated valuation of his property in case of loss, even by the carrier's negligence, if the shipper makes such a choice, understandingly and freely, and names his valuation, he cannot thereafter recover more than the value which he thus places upon his property.

"As a matter of legal distinction, estoppel is made the basis of this ruling—that, having accepted the benefit of the lower rate, in common honesty the shipper may not repudiate the conditions on which it was obtained—but the rule and the effect of it are clearly established."

In C. N. O. & T. P. R. R. Co. v. Rankin, supra, it was said:

"Under our former opinions the settled doctrine is that where alternate rates are offered, a railroad may limit its liability by special contract. George N. Pierce Co. v. Wells, F. & Co., 236 U. S., 278, 59 L. Ed., 576. The essential choice of rates must be made to appear before a carrier can successfully claim the benefit of such a limitation and relief from full liability."

In L. & N. R. Co. v. Hobbs, 136 Tenn., 512, 190 S. W., 461, construing the opinion in the Rankin case, it was held by the Supreme Court of this State that a shipper is chargeable with notice of the contents of schedules filed by the carrier with the Interstate Commerce Commission and duly published, where the bill of lading referred to alternate rates established by the carrier and set forth the shipper's acceptance of the lower rate because of embodied limitations on the carrier's liability.

In all these cases there is preserved the rule that there must be offered to the shipper a choice of rates, based upon valuation of the property shipped, in order that the common-law rule of liability for full actual value, embodied in the Carmack and Cummins Amendments to the Interstate Commerce Act, shall not apply. This rule was also declared and applied in Railroad v. Smith, 123 Tenn., 678, 134 S. W., 866. A case strongly relied on for the Railway Company is

American Railway Express Company v. Daniel, 269 U. S., 40, 70 L. Ed., 154, in which a valuation placed in a receipt for goods shipped was held binding on the shipper, although neither he nor the carrier's agent had any clear knowledge of the true value, and the carrier's knowledge of the agent's ignorance of the value was immaterial. But the receipt not only fixed the value of the goods but also recited that a higher value would have required the payment of a higher rate. Upon the question as to choice being offered, the case does not govern the issue here before us.

In all these cases cited there were recited in the receipts or bills of lading provisions that rates were based upon values—that when less than the real values were agreed upon the rate would be less; and these were offerings of choice between rates, binding upon shippers although they might not read the instruments.

In the bill of lading here in question there were no recitals of such character. There was no notice whatever that the rate was alternative, and the freight charges were not therein set forth. There is no evidence that Stone was given, either orally or in writing, a choice of rates, or was requested to state a valuation; nor is there evidence that he knew that a lower rate was being charged, based on a low valuation. He did nothing whereby the plaintiffs became estopped. This case, therefore, is governed by the common-law rule of liability for the full actual loss incurred. The evidence warrants the conclusion that this loss amounted to $450 as found by the Circuit Judge.

It results that all of the assignments of error are overruled and the judgment of the Circuit Court is affirmed. Judgment will be entered in this court in favor of plaintiffs below against the Railway Company for $450, with interest from the date of the judgment in the Circuit Court, and all costs of this cause. The costs of the appeal in error will also be adjudged against the surety on the appeal bond.

Faw, P. J., and Crownover, J., concur.