## GEORGE N. PIERCE COMPANY, PETITIONER, *v.* WELLS, FARGO & COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 14.  Argued December 8, 1913.  Restored to docket October 26, 1914.
Reargued January 7, 1915.—Decided February 23, 1915.

One who deliberately without fraud or imposition accepts a contract of
shipment limiting the recovery to a valuation specified in the filed
tariff, but who is given the privilege of paying increased rates for
increased valuation and liability up to full amount as also specified
in the filed tariff, is limited in case of loss to recover the specified
amount.

Contracts for limited liability when fairly made do not contravene the
settled principles of the common law preventing the carrier from
contracting against liability for its own negligence.  *Hart v. Penn-
sylvania R. R.*, 112 U. S. 331.

Under the provisions of the Act to Regulate Commerce in regard to
filing tariffs and the Carmack Amendment of 1906 to that Act, the
amount to which the liability of the carrier is limited and the addi-
tional rate for additional liability must be stated in the filed tariff
and must be equally applicable to all shippers under like circum-
stances.

The legality of a contract limiting the carrier's liability to a specified or
agreed valuation does not depend upon that valuation having a
relation to the value of the shipment, but depends upon acceptance
of the parties to the contract and upon the filed tariff and the re-

quirement of the shipper to take notice thereof and to be bound thereby.

If the filed tariff specifies an amount as the carrier's liability which is unreasonable, it is. for the Interstate Commerce Commission to correct upon proper proceedings, but it stands until so corrected and all shippers under like circumstances must be treated alike.

While the fifty dollar limit of value of the shipment and of express companies' liability for shipments of undeclared value at regular rates has been modified by the Commission since the shipment in this case, it was then the filed tariff limitation and the shipper was bound to take notice thereof; and to permit a greater recovery than the amount specified in the filed tariff would result in the very favoritism towards him that it is the purpose of the anti-discrimination provisions in the Act to Regulate Commerce to avoid.

The rule that conclusiveness of filed tariff rates does not relate to attempted fraudulent acts or billings, has no application where, as in this case, the transaction was open and above board and the character of the goods was known to both parties and the shipper was competent to agree to the lower valuation in consideration of the lower rate.

A contention as to liability of the carrier for value of wreckage which was not presented on the pleadings nor involved in the disposition of the case by the court below cannot be considered here.

189 Fed. Rep. 561, affirmed.

THE facts, which involve the validity of clauses in express receipts limiting the liability of the carrier to a fixed amount in absence of declared valuation and payment of a higher rate, are stated in the opinion.

*Mr. Alfred L. Becker,* with whom *Mr. William B. Hoyt, Mr. Maurice C. Spratt* and *Mr. John W. Yerkes* were on the brief, for petitioner.

*Mr. Charles W. Pierson,* with, whom *Mr. William W. Green, Mr. L. A. Doherty* and *Mr. Charles W. Stockton* were on the brief, for respondent.

MR. JUSTICE DAY delivered the opinion of the court.

This action was begun in the Circuit Court of the United States for the Western District of New York, to recover

$20,000 for the loss of certain automobiles, shipped for the petitioner, hereinafter called the Automobile Company, by the respondent, hereinafter called the Express Company. The automobiles were shipped under circumstances to be detailed later, and the recovery of their value was sought for a breach of the contract to carry safely; failure to deliver according to the contract; for negligence; and for breach of the duty imposed upon the initial carrier by § 20 of the Act to Regulate Commerce, the Carmack Amendment (Act of June 29, 1906, c. 3591, 34 Stat. 584). The automobiles were shipped and receipt was issued in the form usually used by the express companies and containing the clause "Nor in any event shall said Company be held liable beyond the sum of Fifty Dollars, at not exceeding which sum the said property is hereby valued unless a' different value is hereinabove stated." The receipt is in the form of the one shown in *Adams Express Co.* v. *Croninger*, 226 U. S. 491, and is identical in form with the one involved in the case of *Wells, Fargo & Co.* v. *Neiman-Marcus Co.*, 227 U. S. 469.

At the trial, the tariff-book of the Express Company was marked for identification, but does not appear to have been embodied in the record. Counsel for the petitioner has, since the argument, filed a memorandum in explanation of the tariffs of the Express Company, and giving extracts therefrom, from which it appears that the rate for uncrated automobiles is double the merchandise rate, and that a through rate could be made by combination of rates from the point of shipment to the basing point, thence to destination. The rates filed, according to the memorandum, show merchandise rate from Chicago, as a basing point, to Buffalo, whence the goods were shipped, and shows merchandise rate, California section, page 20, from Chicago to San Francisco, and double the merchandise rate from Chicago to Buffalo, Chicago to San Francisco, would be $26.50 per hundred pounds, or, using

Kansas City as a basing point, taking the rates from Kansas City to Buffalo, Kansas City to San Francisco, the doubled rate would be the same amount per hundred pounds; also a valuation tariff, showing an additional charge for value in excess of $50, on rate of $8 per hundred pounds or over, 20 cents per hundred pounds, and, as the memorandum shows, if the value of the shipment may be taken to be $15,487.06, the rate for that sum in excess of $50.00 would be $31.00.

The Automobile Company was engaged in Buffalo in the manufacture, sale and shipment of automobiles. It had frequently made use of the services of the Express Company, knew its course of business, had a copy of its tariffs and a book of its express receipts and was familiar with the same; that is, it knew of the filed rate based upon weight or volume and the primary statement of value and consequent limitation upon the right to recover, as well as of the existence of a right to declare additional value and secure in case of loss an additional amount of recovery. Indeed, the Automobile Company had frequently resorted to the method of making a declaration of increased value in order to secure an increased amount of recovery under the tariff.

In May, 1907, the Automobile Company requested the Express Company to furnish an express car for the shipment of a carload of automobiles to San Francisco. Negotiations followed between the officers of the two companies and an understanding was reached. An express car was furnished and put as requested by the Automobile Company upon a sidetrack where it could be by that company conveniently loaded. Four automobiles were then moved by their own power to the place of loading and together with an extra automobile body and other automobile parts were loaded in the car by the shipper. When the car was loaded, triplicate receipts on the form usually used by the Express Company were made out and handed

to the agent of the Automobile Company, who read them, observed the absence of declaration of value and the limitation of $50.00, and said they were satisfactory.  Before the shipment moved, the agent of the Express Company again called the attention of the agent of the shipper to the absence of declared valuation, inquired whether such declaration had been intentionally omitted and whether the property was insured, and was told that the omission was intentional and that the property was insured.  Indeed it was shown beyond dispute that the failure to declare an additional value was the result of a change in the method of shipping its goods which had been shortly before put in practice by the Automobile Company, and that in this particular case the additional value was not declared because the shipment had been ordered from San Francisco, and the primary rate, that is the one shown by the tariff on weight or volume based upon the primary value, had been designated from San Francisco as the rate under which the goods should be carried.  The car moved toward its destination but never reached there because while in transit on the rails of the Santa Fe Railway in the State of Missouri it was destroyed by fire.

This suit was then brought by the Automobile Company against the Express Company and the Santa Fe Railway to recover $20,000.00, the alleged value of the automobiles. The suit as to the Santa Fe Railway was dismissed for want of service and the case was tried only against the Express Company.  As the case went to the jury, there was no denial of some liability on the part of the Express Company, the issue being whether its responsibility was limited to the sum of $50.00, the value of the automobiles as stated in the shipping receipt, which was in accordance with the published and filed tariff, or embraced the actual value of the things shipped.  The trial court sustained the limitation in the receipt and directed a verdict for the $50.00 only, and after the affirmance by the Circuit Court

of Appeals of the Second Circuit of the judgment of the trial court entered on such instructed verdict (189 Fed. Rep. 561), the writ of certiorari which brings the case before us was granted.

The case as made therefore presents the question whether one who has deliberately and purposely, without imposition or fraud, accepted a contract of shipment limiting the amount of recovery to $50.00, which is the sum named in the filed tariffs as the amount of recovery in the absence of declaration of a greater value on the part of the shipper, who is given the privilege of paying an increased rate and having the liability for the full value of the goods, is entitled in case of loss to recover the full value of the property.

That contracts for limited liability, when fairly made, do not contravene the settled principles of the common law preventing the carrier from contracting against its liability for loss by negligence (*Railroad Company* v. *Lockwood*, 17 Wall. 357, 375) was settled by this court in what is known as the *Hart Case* (*Hart* v. *Pennsylvania.R. R.*), 112 U. S. 331. In that case a recovery limited to $1,200 for 6 horses, one shown to be worth $15,000 and the others from $3,000 to $3,500 each, was sustained upon the principle that the contract did not relieve against the carrier's negligence, but limited the amount that might be recovered for such negligence, and it was there held that such contracts when fairly made did not contravene public policy. That case has been frequently followed since and its doctrine applied in construing limited liability contracts in connection with the Carmack Amendment to the Interstate Commerce Act, in a series of cases beginning with the *Adams Express Co.* v. *Croninger*, 226 U. S. 491. See in this connection *Wells, Fargo & Co.* v. *Neiman-Marcus Co.*, 227 U. S. 469; *Kansas Southern Railway* v. *Carl*, 227 U. S. 639; *M., K. & T. Ry.* v. *Harriman*, 227 U. S. 657; *Chicago, Rock Island & Pacific* v. *Cramer*, 232

U. S. 490; *Boston & Maine R. R.* v. *Hooker*, 233 U. S. 97; *A., T. & S. F. Ry.* v. *Robinson*, 233 U. S. 173.

The facts detailed show that there was nothing unfair in the contract. It was made between competent parties, dealing at arms' length, and for the purpose, so far as the shipper was concerned, of securing the lower rate, it deliberately took upon itself the risk of lessened recovery in case of loss for the sake of the lower rate.

Since the Act to Regulate Commerce and its amendments have gone into effect, cases of this character must be decided in view of the provisions of the Commerce Act and its requirement that the carrier shall file its tariffs and rates which shall be open to inspection and shall prescribe rates applicable to all shippers alike, thus to effect one of the main purposes of the law often declared by this court, to require like treatment of all shippers and the charging of uniform rates equally applicable to all under like circumstances. As this court said in one of the earlier cases, considering the limited liability contracts in connection with the provisions of the Interstate Commerce Act (*Kansas' Southern Railway* v. *Carl*, 227 U. S. 639, 652):

"The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff rate is applied, must be conclusive in an action to recover for loss or damage a greater sum. . . . To permit such a declared valuation to be overthrown by evidence *aliunde* the contract, for the purpose of enabling the shipper to obtain a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed, would both encourage and reward undervaluations and bring about preferences and discriminations forbidden by the law. Such a result would neither be just nor conducive to sound morals or wise policies. The valuation the shipper declares determines the legal rate where there are two rates based upon valuation. He must take notice of

the rate applicable, and actual want of knowledge is no excuse."

But it is said, and this fact was the basis of the dissenting opinion in the Circuit Court of Appeals, that there was no valuation at all in this case, and that the disproportion between the actual value of the automobiles shipped,—about $15,000,—and $50 demonstrates this fact, and it is insisted that what was done was merely an arbitrary and unreasonable limitation in the guise of valuation. This argument overlooks the fact that the legality of the contract does not depend upon a valuation which shall have a relation to the actual worth of the property. None such was attempted in the *Neiman-Marcus Case*, the *Croninger Case*, or the *Hooker Case*. But the contract embodied in the receipt was sustained in the *Express Company Cases*, because of the acceptance of the same by the parties as the basis of shipment, and by force of the statute as to the filed tariff and the requirement of the shipper to take notice of its terms and to be bound thereby. In each of those cases the filed tariff showed an opportunity to the shipper to have a recovery in a greater value than was declared, thus making it optional with the shipper to ship at the lower rate and not to avail himself of the right to greater recovery upon paying the higher rate named in the tariff. As the cases cited have held, so long as the tariff rate remains operative, the alternative rates based on value are deemed to be in force and controlling of the rights of the parties. *Great Northern Ry.* v. *O'Connor*, 232 U. S. 508; *Boston & Maine R. R.* v. *Hooker*, 233 U. S. 97, 121.

If the rates were unreasonable it is for the Commission to correct them upon proper proceedings. If this were not so, the Interstate Commerce Act would fail to make effectual one of its prime objects, the prevention of discrimination among shippers. So long as the tariffs are adhered to, shippers under the same circumstances are treated alike.

Since the cause of action in this case arose, the Inter-

state Commerce Commission has dealt with this subject, (*The Matter of Express Rates*, 28 I. C. C. 131), and the fifty-dollar limitation and the classification based upon the valuation not exceeding $50 has been made applicable only to shipments weighing not more than 100 pounds. (28 I. C. C. 137, 138.) Under that weight the recovery is still limited to the sum of $50 unless a greater value is declared at the time of shipment, and the declared value in excess of the value specified paid for, or agreed to be paid for, under the schedule of charges for excess value. The limitation in the tariffs of $50 was made in view of the great mass of merchandise of moderate value in shipments received by the Company, and for that reason has been permitted in modified form to remain in the published tariffs by the action of the Interstate Commerce Commission in the matter to which we have referred.

In the *O'Connor Case* (232 U. S. 508) and the *Robinson Case* (233 U. S. 173), above cited, the doctrine of the conclusiveness of the filed rates was said to have no application to attempted fraudulent acts or false billing. We do not perceive how this doctrine can be applicable to the present case. As the statement of facts shows, the transaction was open and above board, the character of the goods was plainly disclosed and known to both parties, and the rate paid was not attempted to be fixed upon actual value alone, but upon a value which the shipper was competent to agree to, in consideration of the lower rate. Indeed, if a recovery for full value was to be permitted in this case, the shipper itself would obtain an undue advantage in recovering such value, when it had purposely and intentionally taken the risk of less responsibility from the carrier, for a lower rate. Such result would bring about the very favoritism which it is the purpose of the Commerce Act to avoid.

The suggestion that there is a wrong to other shippers, who value their goods at their real worth, is answered by

the fact that this tariff was open to all under the same circumstances, and while it remained in force, any shipper who wished to take the risk of a recovery for very much less than the value of his goods might have the benefit of the shipment at the reduced rate. The contention that the carrier should have been held to account for the value of what was left of the automobiles after the wreck and fire does not seem to be presented by the pleadings and was not involved in the disposition of the case ultimately made upon the contract of shipment. We find no error in the court's withholding that issue from the jury in the condition of the record.

Finding no error in the judgment of the Circuit Court of Appeals, it is

*Affirmed.*

MR. JUSTICE PITNEY dissenting.