**UNDERWRITERS AT LLOYDS OF LONDON, Plaintiff–Appellee,**

v.

**NORTH AMERICAN VAN LINES, Defendant–Appellant.**

No. 87–1872.

United States Court of Appeals, Tenth Circuit.

Nov. 30, 1989.

Kenneth D. Upton, Jr. (Linda G. Alexander, with him on the briefs), Niemeyer, Noland & Alexander, Oklahoma City, Okl., for plaintiff-appellee.

David A. Cheek (Victor F. Albert, with him on the briefs), McKinney, Stringer & Webster, P.C., Oklahoma City, Okl., for defendant-appellant.

---

Before HOLLOWAY, Chief Judge, MCKAY, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

The court on its own motion has determined to consider en banc whether the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §§ 11707 and 10730,[1] preempts state common law remedies for negligent damage to goods shipped by common carrier. After reviewing the law on this subject, and reconsidering our position, we now hold that state common law remedies are preempted by the Carmack Amendment. To the extent that our prior decisions in *Reed v. Aaacon Transportation, Inc.*, 637 F.2d 1302 (10th Cir. 1981); *Litvak Meat Co. v. Baker*, 446 F.2d 329 (10th Cir.1971); and *L.E. Whitlock Truck Service, Inc. v. Regal Drilling Co.*, 333 F.2d 488 (10th Cir.1964), hold or state otherwise, they are overruled. Because the proceedings and judgment in the district court were, of necessity, based on those decisions, the judgment of the district court must be vacated and the case remanded for further proceedings consistent with this opinion.

I.

In connection with an employment-related transfer, Robert and Lucinda Chapman engaged defendant-appellant North American Van Lines ("North American") to move their household goods and other personal property from Denver, Colorado to Houston, Texas. For this and other matters relating to the move, the Chapmans were assisted and represented by professional consultants hired by their employer.

As permitted by the Interstate Commerce Commission, and in accordance with its filed tariff, North American's charge for transporting the Chapman's goods depended upon the extent of the liability it assumed for loss or damage. The bill of lading signed by the Chapmans contained the following terms relating to that subject:

"VALUATION STATEMENT
UNLESS THE SHIPPER EXPRESSLY RELEASES THE SHIPMENT TO A VALUE OF 60 CENTS PER POUND PER ARTICLE, THE FORWARDER'S MAXIMUM LIABILITY FOR LOSS AND DAMAGE SHALL BE EITHER THE LUMP SUM VALUE DECLARED BY THE SHIPPER OR AN AMOUNT EQUAL TO $1.25 FOR EACH POUND OF WEIGHT IN THE SHIPMENT, WHICHEVER IS GREATER.
THE SHIPMENT WILL MOVE SUBJECT TO THE RULES AND CONDITIONS OF THE FORWARDER'S TARIFF. SHIPPER HEREBY RELEASES THE ENTIRE SHIPMENT TO A VALUE NOT EXCEEDING: *$.60 per lb.*
NOTICE: THE SHIPPER SIGNING THIS CONTRACT MUST INSERT IN THE SPACE ABOVE, IN HIS OWN

---

**1.** The pertinent portions of the Carmack Amendment, as presently constituted, are as follows:

"A common carrier ... subject to the jurisdiction of the Interstate Commerce Commission ... shall issue a receipt or bill of lading for property it receives for transportation.... That carrier ... and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission ... are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported in the United States...."

49 U.S.C. § 11707(a)(1).
"The Interstate Commerce Commission may require or authorize a carrier ... to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by written *declaration of the shipper*, or by a *written agreement*, when that value would be reasonable under the circumstances surrounding the transportation."
49 U.S.C. § 10730(a).
"Except as otherwise provided in this subtitle, the remedies provided under this subtitle are in addition to remedies existing under another law or at common law."
49 U.S.C. § 10103.

HANDWRITING, EITHER HIS DEC-LARATION OF THE ACTUAL VALUE OF THE SHIPMENT, OR THE WORDS '60 cents per pound per article.' OTH-ERWISE, THE SHIPMENT WILL BE DEEMED RELEASED TO A MAXI-MUM VALUE EQUAL TO $1.25 TIMES THE WEIGHT OF THE SHIPMENT IN POUNDS."

(Shipper) s/Lucinda Chapman

DATE: 1/9/85

Addendum at Tab 5, p. 1. The bill of lading also contained the following printed language, taken verbatim from North American's Interstate Commerce Commission Tariff:

"This contract is subject to all the rules, regulations, rates and charges, in carrier's currently effective applicable tariffs on file with the Interstate Commerce Commission including, but not limited to, the following terms and conditions:

\*   \*   \*   \*   \*   \*

The carrier's maximum liability shall be either:

(1) The amount of the actual loss or damage not exceeding $1.25 times the actual weight (in pounds) of the shipment, or the lump sum declared value, whichever is greater; or

(2) The actual loss or damage not exceeding sixty (60) cents per pound of the weight of any lost or damaged article when the shipper has released the shipment to carrier, in writing, with liability limited to sixty (60) cents per pound per article."

*Id.* at p. 2.

The actual value of the Chapmans' property exceeded $100,000.00. However, North American's charge for assuming a liability in that amount substantially exceeded what plaintiff-appellee Lloyds of London ("Lloyds") would charge for an equal amount of insurance on the goods. Accordingly, the Chapmans, upon the professional advice of their consultant, made a deliberate, fully informed, and calculated decision to save money by insuring their goods for $100,000.00 with Lloyds and signing up for North American's cheapest freight charge. They obtained that low rate by declaring in handwriting on the bill of lading that the value of their goods did not exceed $.60 per pound, Def. Ex. 1, or a total of approximately $7,500, according to North American.

As the district court found, the bill of lading, completed and signed by the Chapmans, clearly and unambiguously limited North American's liability for loss and damage to the Chapmans' household goods to $.60 per pound. The Chapmans knowledgeably bargained for that limitation and the corresponding freight rate. There was full equality of bargaining power, especially considering the professional consultants who advised the Chapmans in their dealings with North American. *See, e.g.,* R.Vol. II at 138–40, 153; R.Vol. III at 170. There is not the slightest indication that the bargained-for limitation on North American's liability was understood by the parties to be less than a blanket limitation covering all forms of action against North American for loss or damage to the Chapmans' goods. Finally, there is no dispute that the bill of lading was lawful in form, properly completed, and reflected a tariff duly filed with and approved by the Interstate Commerce Commission.

In the course of shipment, the Chapmans' goods were destroyed or damaged by fire. Lloyds paid on its insurance policy more than $100,000.00 directly to or on behalf of the Chapmans for the loss and repair of their property. Thereafter, pursuant to its subrogation rights Lloyds pursued this suit against North American for the entire amount of the loss, without regard to any limitation on liability contained in the bill of lading.

Lloyds litigation strategy for avoiding the agreed upon limitation of liability in the bill of lading was to plead and prove common law negligence on the part of North American. Lloyds reasoned that the bill of lading, being a contract, served only to limit damages in contract actions for an alleged breach of North American's obligations specified in the bill of lading, and that a cause of action in tort is completely separate from an action on the bill of lading itself. This position found partial sup-

port in our decisions in *Reed, Litvak,* and *Whitlock,* which held that the Carmack Amendment did not preempt state common law actions by shippers against carriers. None of those cases suggested what the court's position would be with respect to an argument that the parties could lawfully contract to limit common law tort liability, even if such a cause of action was not preempted by the Carmack Amendment.

Because of our decisions in *Reed, Litvak,* and *Whitlock,* the district court denied North American's motion for partial summary judgment to restrict the amount of damages in this case to the value stated in the bill of lading and allowed Lloyds to proceed to trial before a jury solely on a theory of common law negligence. During the trial the district court also refused to admit North American's evidence that even under a common law negligence cause of action, the amount of damages in this case were limited to the contractually agreed amount. At the close of the evidence North American moved for a directed verdict limiting any damages to the contractually agreed amount of $.60 per pound per article. That motion was denied and the case was submitted to the jury under a common law negligence theory without evidence or instructions regarding the contractual limitation of damages. The jury returned a verdict in favor of Lloyds in the amount of $70,000.00. North American does not appeal the jury's finding of negligence. It appeals only with respect to the issue of damages. North American asks us first to reconsider this court's position on the preemptive effect of the Carmack Amendment on common law negligence remedies. As an alternative argument, North American contends that the district court erred in excluding evidence that the parties contractually limited North American's liability for negligent damage to the Chapmans' goods, and erred in denying North American's motion for a directed verdict limiting the amount of common law damages to $.60 per pound.

## II.

The Carmack Amendment was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887, and as part of the Hepburn Act, ch. 3591, 34 Stat. 584 (1906), and was codified at 49 U.S.C. 20(11). It deals with the familiar and historic subject of carrier liability for goods lost or damaged in shipment. The enactment codified the initial carrier's liability. It also contained the proviso "[t]hat nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under the existing law." 34 Stat. at 593. The substance of that proviso has been retained to the present time, appearing at 49 U.S.C. § 10103 as follows:

"Except as otherwise provided in this subtitle, the remedies provided under this subtitle are in addition to remedies existing under another law or at common law."

In *Litvak,* relying extensively on our prior decision in *Whitlock,* we referred to that proviso in the law and noted that the statute "[b]y its very terms ... did not intend to preempt every cause of action brought by a shipper against a carrier for damage to its interstate shipment." *Litvak Meat Co. v. Baker,* 446 F.2d at 335. Rather, "in addition to codifying the common-law rule of liability, the Carmack Amendment was enacted to eliminate from a shipper's burden of proof the often insurmountable hurdle of demonstrating damage at the hands of a specific carrier." *Id.* at 336. Thus, the principal function of the statute was to permit an action against the initial carrier even though damage may have been caused by a connecting carrier. *Id.* We drew a distinction between tort and contract causes of action against shippers, concluding:

"Thus, though the Carmack Amendment allows a shipper to enjoy the elimination of this one element in his burden of proof, it does not compel him to avail himself of the opportunity. The more difficult road of common-law action against a carrier is still open to a shipper wishing to traverse it. The common-law action is conceptualized on contractual principles with tort overtones, and is a special refinement of the general law of

bailment. However, at common law a bailor has a choice of remedies where a bailee has damaged the bailed property or breached the bailment contract....

....

[T]he existence of a contractual remedy at common law does not prevent the shipper from bringing an action based solely on negligence. To be sure, in such an action, a greater burden is imposed on the plaintiff, for he must prove more than the fact of damage to the goods in shipment by the defendant; he must also prove that negligence of the defendant was the proximate cause of the damage claimed. To say that such a remedy exists is not to say that it is often utilized by a bailor-shipper against a bailee-common carrier. The relative ease of proving a case in contract, either at common law or under the Carmack Amendment, militates against its use, and is, to be sure, the more practical, available remedy. But here we are not dealing with the practicability of a remedy in negligence or the advisability of using it. Our inquiry is limited to a determination that such a remedy exists, apart from the contractual remedy offered by the Carmack Amendment."

*Litvak Meat Co. v. Baker*, 446 F.2d at 336–37.

Our view in *Whitlock, Litvak,* and *Reed,* that the Carmack Amendment "did not oust all other remedial rights of shippers," *Litvak Meat Co. v. Baker*, 446 F.2d at 337, appears to find direct support on the face of the statute, at least as a general proposition. However, there is no legislative [2] and virtually no judicial support for the more specific proposition that state common law negligence remedies continue to exist apart from the federal statute. To the contrary, as illustrated more fully below, the Supreme Court and other authorities have described the Carmack Amendment in broad, preemptive terms, and have relegated the proviso relating to other remedies to a category of almost total insignificance.

In *New York, New Haven & Hartford Railroad Co. v. Nothnagle*, 346 U.S. 128, 131, 73 S.Ct. 986, 988, 97 L.Ed. 1500 (1953), the Supreme Court stated that "[w]ith the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss." Likewise, in *Atchison, Topeka & Santa Fe Railway Co. v. Harold*, 241 U.S. 371, 378, 36 S.Ct. 665, 668, 60 L.Ed. 1050 (1916), the Court stated that "[t]he Carmack Amendment ... was an assertion of the power of Congress over the subject of interstate shipments ... which, in the nature of things, excluded state action." But the most extensive review of the statute is found in the leading case of *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913), in which the Supreme Court, referring to the Carmack Amendment, observed that—

"Almost every detail of the subject is covered so completely that there can be no rational doubt that Congress intended to take possession of the subject, and supersede all state regulation with reference to it....

To hold that the liability therein declared may be decreased or diminished by local regulation or local views of public policy will either make the provision less than supreme, or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment. The duty to issue a bill of lading and the liability thereby assumed, are covered in full, and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."

*Adams Express Co. v. Croninger*, 226 U.S. at 505–06, 33 S.Ct. at 151–52.

---

**2.** The amendment itself was added with no discussion or debate. 40 Cong.Rec. 7075 (1906). The only real description of the provision was offered by Congressman William Richardson, without touching on the issue at hand. *See* 40 Cong.Rec. 9580 (1906).

There is no doubt that negligent loss or damage to goods was included within the broad subject matter which the Carmack Amendment was intended to codify. More than one hundred years ago the Supreme Court, in a case cited many times after the enactment of the Carmack Amendment, held that a fairly bargained-for limitation on liability in a bill of lading covered a loss through negligence. *Hart v. Pennsylvania R.R. Co.*, 112 U.S. 331, 338, 5 S.Ct. 151, 154, 28 L.Ed. 717 (1884). That recurring theme was referred to by the Supreme Court following the enactment of the Carmack Amendment in *Atlantic Coast Line Railroad v. Riverside Mills*, 219 U.S. 186, 206–07, 31 S.Ct. 164, 170–71, 55 L.Ed. 167 (1911), where, referring to the reach of the Carmack Amendment, the Court stated that "[t]he receiving carrier is, as principal, liable not only for its own negligence, but for that of any agency it may use...." In *Adams Express Co.*, the Supreme Court relied squarely on the principles set forth in *Hart* to the effect that it would be unjust to permit a shipper to obtain a lower rate by contracting to limit the carrier's liability, and then avoid that limitation through a common law negligence action. The Court stated:

"Neither is it conformable to plain principles of justice that a shipper may understate the value of his property for the purpose of reducing the rate, and then recover a larger value in case of loss. Nor does a limitation based upon an agreed value for the purpose of adjusting the rate conflict with any sound principle of public policy. The reason for the legality of such agreements is well stated in *Hart v. Pennsylvania Railroad*, cited above, where it is said ( [at] p. 340 [5 S.Ct. at 155–56] ):

'The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no

greater value, for the purposes of the contract of transportation, between the parties to that contract. *The carrier must respond for negligence up to that value.* It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. *On the contrary, it would be unjust and unreasonable,* and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, *and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss.' "*

*Adams Express Co. v. Croninger,* 226 U.S. at 510–11, 33 S.Ct. at 153–54 (quoting *Hart v. Pennsylvania R.R. Co.,* 112 U.S. at 340, 5 S.Ct. at 155–56) (emphasis added). Subsequent decisions by the Supreme Court carry the same theme that the Carmack Amendment was a codification of the common law rule of liability for negligent damage to goods, as expressed in *Hart.* They do not give the slightest indication that some sort of separate state common law tort remedy is available to a shipper for the full value of negligent loss of or damage to goods. In *Missouri, Kansas, & Texas Railroad Co. v. Harriman,* 227 U.S. 657, 33 S.Ct. 397, 57 L.Ed. 690 (1913), the Supreme Court reviewed an action to recover the value of cattle killed by a negligent derailment. The Court reversed a state court decision permitting a shipper to avoid the terms of a bill of lading on the ground "that every such contract, where the loss was due to negligence, was null and void under the law and public policy of the State...." *Id.* at 667, 33 S.Ct. at 399. The Supreme Court ruled that the Carmack Amendment governed and that the contract contained a valid limitation on liability stating that

"the validity of a limitation upon the liability thereby imposed [by the bill of lading] is a Federal question to be determined under the general common law, and, as such, is withdrawn from the field of state law or legislation. The liability

imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper...."

*Id.* at 672, 33 S.Ct. at 401 (citations omitted). Referring to the event of a loss by negligence, the court stated further that even though the value of the cattle shipped greatly exceeded the valuation represented by the shipper on the bill of lading, "[i]t is neither just nor equitable that he shall benefit by the lower rate, and then recover for a value which he said did not exist, in order to obtain that rate." *Id.* at 671, 33 S.Ct. at 400.

In *George N. Pierce Co. v. Wells Fargo & Co.*, 236 U.S. 278, 35 S.Ct. 351, 59 L.Ed. 576 (1915), the Supreme Court considered an action brought on both contract and common law negligence theories for the full value of some automobiles lost during shipment. It held that under the Carmack Amendment it was proper for a carrier to limit its liability in exchange for a lower rate, stating:

"Since the Act to Regulate Commerce and its amendments have gone into effect, cases of this character must be decided in view of the provisions of the Commerce Act and its requirement that the carrier shall file its tariffs and rates which shall be open to inspection and shall prescribe rates applicable to all shippers alike, thus to effect one of the main purposes of the law often declared by this court, to require like treatment of all shippers and the charging of uniform rates equally applicable to all under like circumstances. As this court said in one of the earlier cases, considering the limited liability contracts in connection with the provisions of the Interstate Commerce Act (*Kansas Southern Railway v. Carl*, 227 U.S. 639, 652 [33 S.Ct. 391, 395, 57 L.Ed. 683 (1913)]):

'The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff rate is applied, must be conclusive in an action to recover for loss or damage a greater sum.... To permit such a declared valuation to be overthrown by evidence *ali-*

*unde* the contract, for the purpose of enabling the shipper to obtain a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed, would both encourage and reward undervaluations and bring about preferences and discriminations forbidden by the law. Such a result would neither be just nor conducive to sound morals or wise policies.' "

*George N. Pierce Co. v. Wells Fargo & Co.*, 236 U.S. at 284, 35 S.Ct. at 353–54; *see also, e.g., Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964); *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936); *American Ry. Express Co. v. Levee*, 263 U.S. 19, 44 S.Ct. 11, 68 L.Ed. 140 (1923); *Boston & Me. R.R. v. Piper*, 246 U.S. 439, 38 S.Ct. 354, 62 L.Ed. 820 (1918); *Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916).

The proviso with respect to the preservation of common law remedies is not given the slightest recognition in these and other Supreme Court decisions as a possible alternative avenue by which a shipper can ignore its bargained-for limitation of a carrier's liability for negligent damage to the shipper's goods. The reason is explained in *Adams Express Co.*, where the Supreme Court imposed an exceedingly narrow construction on the proviso:

"But it has been argued that the nonexclusive character of this regulation is manifested by the proviso of the section, and that state legislation upon the same subject is not superseded, and that the holder of any such bill of lading may resort to any right of action against such a carrier conferred by existing state law. This view is untenable. It would result in the nullification of the regulation of a national subject and operate to maintain the confusion of the diverse regulation which it was the purpose of Congress to put an end to.

What this court said of § 22 of this act of 1906 in the case of *Texas & Pac. Ry. v. Abilene Cotton Mills*, 204 U.S. 426 [27

S.Ct. 350, 51 L.Ed. 553 (1907) ], is applicable to this contention. It was claimed that that section continued in force all rights and remedies under the common law or other statutes. But this court said of that contention what must be said of the proviso in § 20, that it was 'evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the Interstate Commerce Act, or by state statute, or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act.' Again, it was said, of the same clause, in the same case, that it could 'not in reason be construed as continuing in a shipper a common law right the existence of which would be inconsistent with the provisions of the act. In other words, the act cannot be said to destroy itself.'

To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action, gives to it a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would cause the proviso to destroy the act itself."

*Adams Express Co. v. Croninger*, 226 U.S. at 507–08, 33 S.Ct. at 152–53.

Thus, in *Georgia, Florida & Alabama Railway Co. v. Blish Milling Co.*, 241 U.S. at 196–97, 36 S.Ct. at 544–45, the Supreme Court held that a state conversion action could not be used by a shipper to avoid a provision in a bill of lading with respect to the time period in which a claim could be brought, remarking:

"[T]he words of [the Carmack Amendment] are comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation.... [T]he effect of the stipulation could not be escaped by the mere form of the action. The action is in trover, but, as the state court said: 'If we look beyond its technical denomination, the scope and effect of the action is nothing more than that of an action for damages against the delivering carrier.' It is urged, however, that the carrier, in making the misdelivery, converted the [goods shipped] and thus abandoned the contract. But the parties could not waive the terms of the contract under which the shipment was made pursuant to the Federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariffs and regulations. A different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed."

*Id.* (citations omitted). Similarly, in *American Railway Express Co. v. Levee*, 263 U.S. at 21, 44 S.Ct. at 12–13, Justice Holmes delivered the opinion of the Court that a state rule purporting to regulate the burden of proof on damages could not be used to avoid a contractual limitation on liability which was valid under the Carmack Amendment. The Justice wrote:

"The effect of the stipulation could not have been escaped by suing in trover and laying the failure to deliver as a conversion if that had been done. No more can it be escaped by a state law or decision that a failure to deliver shall establish a conversion unless explained. The law of the United States cannot be evaded by the forms of local practice.... The local rule applied as to the burden of proof narrowed the protection that the defendant had secured and therefore contravened the law."

*Id.* (citations omitted).

Although the proviso in question has been firmly narrowed by the Supreme Court for more than seventy-five years now, Congress has shown no inclination to disagree. In fact, in the two Cummins Amendments to the Interstate Commerce Act (incorporated into the Carmack Amendment in 1915 and 1916, respectively), Congress reacted to the Supreme Court decision in *Adams Express Co. v. Croninger* by first overruling and then restoring one

aspect of the Court's decision. But, in so doing, nothing was said about the Court's narrowing of the reach of the proviso with respect to common law remedies. Indeed, much of the debate on the floor of the House and Senate simply took for granted that the Carmack Amendment was the exclusive regulation of the subject of carrier liability for its own negligence resulting in the loss or damage to the shipper's goods. *See* H.R.Rep. No. 1341, 63d Cong., 3d Sess. 2 (1915); 53 Cong.Rec. 5450 (1915) (remarks of Rep. Vaughan); 53 Cong.Rec. 5448 (1915) (remarks of Rep. Towner); 53 Cong. Rec. 5446 (1915) (remarks of Rep. Rayburn); 51 Cong.Rec. 9779 (1914) (remarks of Sen. Sutherland).

> "What is asked by this bill is simply that the railroads shall respond for their own negligence just as others do.... Anyone would admit that a shipping contract which provided that if the shipper accepted the rates given the railroad should be absolved of all liability for its own negligence would be wrong."

53 Cong.Rec. 5449 (1915) (remarks of Rep. Towner).

Because of the extensive history of Supreme Court interpretation of the Carmack Amendment, it is hardly surprising that every circuit which has considered the matter, with the sole exception of this circuit, has either held or indicated it would hold that the Carmack Amendment preempts state common law remedies against a carrier for negligent damage to goods shipped under a proper bill of lading. *See Intech, Inc. v. Consolidated Freightways, Inc.,* 836 F.2d 672, 677 (1st Cir.1987), (stating that "the Carmack Amendment provides the exclusive remedy" for "an action for damages against the delivering carrier"); *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1415 (7th Cir.1987) ("We reject the plaintiff's argument and their reliance on the cases of the Tenth Circuit and hold that the remedy provision of the Carmack Amendment preempts all state and common law remedies inconsistent with the Interstate Commerce Act...."), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); *Hopper Furs, Inc. v. Emery Air Freight Corp.,* 749 F.2d 1261,

1264 (8th Cir.1984) ("A shipper who brings a negligence action may not recover in excess of the amount specified in the receipt or bill of lading."); *Air Products & Chemicals, Inc. v. Illinois Cent. Gulf R.R. Co.,* 721 F.2d 483, 487 (5th Cir.1983) ("As the authorities previously noted hold, Congress intended by the Carmack Amendment to provide a uniform national remedy against carriers for breach of the contract of carriage, including a liability for default in any common-law duty as a common carrier."), *cert. denied,* 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984); *Millers Mut. Ins. Ass'n of Ill. v. Southern Ry. Corp.,* 483 F.2d 1044, 1049 (4th Cir.1973) (stating that the court was inclined to accept the preemption argument, although not called upon to decide the issue in that case); *Fulton v. Chicago Rock Island & Pac. R.R. Co.,* 481 F.2d 326, 331 (8th Cir.) ("[W]e agree that the Carmack Amendment has preempted suits in specific negligence by holders of bills of lading against their carriers."), *cert. denied,* 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973); *W.D. Lawson & Co. v. Penn Cent. Co.,* 456 F.2d 419, 421 (6th Cir.1972) ("As to the second issue posed by this appeal concerning whether or not the Carmack Amendment preempted common law suits of the nature of the first count stated in this case against both appellants, we hold that it did."); *American Synthetic Rubber Corp. v. Louisville & Nashville R.R. Co.,* 422 F.2d 462, 466, 468 (6th Cir. 1970) ("These cases make it clear that when damages are sought against a common carrier for failure to properly perform, or for negligent performance of, an interstate contract of carriage, ... a tort action does not lie."); *United States v. Reading Co.,* 289 F.2d 7, 9 (3d Cir.1961) (presuming that an action for negligence would be brought under the Carmack Amendment, which "codifies the common law rule of a carrier's liability"); *see also Rockholt v. United Van Lines,* 697 F.Supp. 383, 387–88 (D.Idaho 1988) (adopting majority view with respect to complete preemption); *Mesta v. Allied Van Lines Int'l, Inc.,* 695 F.Supp. 63, 65 (D.Mass.1988) (rejecting *Reed* and accepting *Hughes* analysis); *Sok-*

*hos v. Mayflower Transit, Inc.*, 691 F.Supp. 1578, 1581 (D.Mass.1988) (negligence claim preempted by the Carmack Amendment); *George R. Hall, Inc. v. Superior Trucking Co.*, 514 F.Supp. 581, 583 (N.D.Ga.1981) ("Though the Court is impressed by the reasoning in *Litvak* ... seventy-five years of judicial interpretation of the Carmack Amendment have now settled the question of the availability of state remedies against a common carrier.... Under the Carmack Amendment and the judicial decisions interpreting it, plaintiff may only rely on the remedies provided by the bill of lading...."). *Contra Starmakers Publishing Corp. v. Acme Fast Freight, Inc.*, 615 F.Supp. 787, 790 (S.D.N.Y.1985) (accepting *Litvak* rule allowing common law negligence claims but holding no duty owed beyond the contract for the particular allegations involved); *Season-All Indus., Inc. v. Merchant Shippers*, 451 F.Supp. 727, 734–35 (W.D.Pa.1978) (recognizing a common law action for negligence as distinct from the Carmack Amendment); *E.W. Bowman, Inc. v. Norfolk & W. Ry. Co.*, 403 F.Supp. 389, 391–92 (W.D.Pa.1975) (acknowledging the rule in *Litvak*).

### III.

Having reconsidered the history and judicial interpretations of the statute, we now hold that the Carmack Amendment preempts state common law remedies against common carriers for negligent loss or damage to goods shipped under a lawful bill of lading. To the extent that our previous decisions in *Reed v. Aaacon Transportation, Inc.*, 637 F.2d 1302 (10th Cir.1981); *Litvak Meat Co. v. Baker*, 446 F.2d 329 (10th Cir.1971); and *L.E. Whitlock Truck Serv., Inc. v. Regal Drilling Co.*, 333 F.2d 488 (10th Cir.1964), hold or state to the contrary, they are overruled. The shippers' damages in this case are limited to the released value of $.60 per pound per article as established by the bill of lading. Because of our decision on the preemption issue, it is unnecessary to consider the alternative position argued by North American.

The judgment of the district court is VACATED and the cause REMANDED for further proceedings consistent with this opinion.