978 F.2d 1267
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Derrick R. PARKHURST, Don Smith, and Raymond E. Horton,
Plaintiffs-Appellants,
v.
UNITED PARCEL SERVICE, INC., Defendant-Appellee.
 No. 92-1057.
 United States Court of Appeals, Tenth Circuit.
 Oct. 21, 1992.
 
 Before SEYMOUR, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs and appellants, Derrick R. Parkhurst, Don Smith, and Raymond E. Horton, proceeding pro se, appeal from an order of the United States District Court for the District of Colorado, granting summary judgment to defendant, United Parcel Service, Inc. ("UPS") in this action involving the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, and the appropriate limitation of liability for the loss of certain packages shipped by UPS. They also seek permission to proceed in forma pauperis, which we grant. We affirm the district court's order.
 
 
 3
 Plaintiffs were inmates at the Wyoming State Penitentiary at the times relevant to this appeal. They alleged in their complaint that in April, 1990, UPS shipped three packages for them, with a value of $2,150, $2,299, and $450, respectively.[1] They claim that, as a result of UPS' failure to deliver the packages, they lost the value of the packages, plus future profits of $12,900 which they allegedly would have earned from the contents of the packages. They also sought punitive damages from UPS.
 
 
 4
 UPS admits that it did ship two packages for plaintiffs on April 17, 1990, and avers that plaintiffs declared the value of the packages to be $2,000 and $1,970. A UPS Pickup Record-Register dated April 17, 1990, indicates that two packages with declared values of $2,000 and $1,970 were indeed picked up from the Wyoming State Penitentiary. UPS asserts that plaintiffs paid a charge of $.25 per $100 of declared value for each package. Plaintiffs do not dispute that fact.
 
 
 5
 UPS further admits that it shipped a third package for plaintiffs on April 19, but that plaintiffs declared no value for that package. Another UPS Pickup Record-Register dated April 19, 1990, indicates that three packages were picked up from the Penitentiary, but that none had a declared value of $450. Plaintiffs allege they paid $21.38 total for shipping all the packages. The record contains no evidence as to payment.
 
 
 6
 Upon learning that the packages had not been delivered, and after attempting unsuccessfully to trace them, UPS sent plaintiffs a check in the amount of $4,081.13, representing the sum of the declared values for the two packages, plus $100.00, the maximum payable for loss of a package with no declared value (i.e., the third package).
 
 
 7
 The district court, after referring the matter to a magistrate judge, granted UPS' motion for summary judgment, holding that its payment of $4,081.13 to plaintiffs satisfied their claim under the Carmack Amendment. This appeal followed.[2]
 
 
 8
 Plaintiffs argue: (1) an affidavit submitted by UPS in support of its motion for summary judgment failed to meet the requirements of Fed.R.Civ.P. 56 and should therefore not have been considered by the district court; and (2) the district court improperly held that plaintiffs were deemed to have constructive notice of the liability limiting provision of the tariff schedule UPS had filed with the Interstate Commerce Commission.
 
 
 9
 We review the district court's decision to admit the challenged affidavit under an abuse of discretion standard. United States v. Alexander, 849 F.2d 1293, 1301 (10th Cir.1988). We review de novo the grant of a motion for summary judgment, applying the same standards as the district court. Scofield v. Telecable of Overland Park, Inc., Nos. 91-3014, 91-3015, 91-3016, 91-3017, 1992 U.S.App. LEXIS 19732 at *12-13 (10th Cir. July 26, 1992); West v. Grand County, 967 F.2d 362, 365 (10th Cir.1992). "Specifically, we must determine whether there are any genuine issues of material fact and, if not, whether the substantive law was correctly applied." Aldrich Enters., Inc. v. United States, 938 F.2d 1134, 1138 (10th Cir.1991). We must view the evidence in the light most favorable to the nonmoving party. Id. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 10
 We first address the propriety of the admission of the affidavit. The disputed affidavit was that of Thomas J. Butler, the District Customer Service Manager for UPS, who testified that the tariff UPS had filed with the Interstate Commerce Commission was in effect during the relevant time period--April, 1990--and that the UPS Pickup Record-Registers were "records of information, routinely generated by a UPS employee with knowledge of that information, kept in the course of regularly conducted business activities." Affidavit of Thomas Butler, Doc. 50, Ex. A at 2. Attached to the affidavit were copies of both the tariff and the Pickup Record-Registers.
 
 
 11
 Plaintiffs argue that Mr. Butler's affidavit was not based on personal knowledge, since he held the position stated--District Customer Service Manager--since June, 1990, more than one month after the events relevant to this case. We reject this challenge to the affidavit. Mr. Butler was testifying as to the tariff and its effective dates, and to the routine nature of the Pickup Record-Registers. He was not purporting to testify as to his personal knowledge of the actual facts of this case.
 
 
 12
 Plaintiffs also argue that Mr. Butler failed to state that the copy of the tariff attached to his affidavit was accurate, or that it comported with 49 U.S.C. § 10730. We can presume that Mr. Butler attested to the accuracy of the tariff, inasmuch as he identifies it as the tariff in effect during the relevant time. Furthermore, plaintiffs make no argument as to specific deficiencies in the tariff, and Mr. Butler is hardly the person qualified to state that the tariff legally complies with 49 U.S.C. § 10730. Thus, in our view, there is no dispute as to the validity of the tariff.
 
 
 13
 Finally, plaintiffs challenge the Pickup Record-Registers, arguing that Mr. Butler did not attest to their accuracy nor did he state the origination of those documents, and arguing that the liability limitation provisions were illegible on the copies received by plaintiffs. The copies of the Record-Registers in the appellate record are legible; we therefore reject plaintiffs' latter argument. As to the first argument, Mr. Butler testified as to the routine business nature of the documents, within the meaning of Fed.R.Evid. 803(6), and nothing about the documents causes us to doubt their nature. Mr. Butler sufficiently identified the origination of the documents, such that we may rely upon them.
 
 
 14
 We turn now to the question of whether UPS' liability to plaintiffs was properly limited. "The Carmack Amendment [49 U.S.C. § 11707(a), (c) ] codifies an initial carrier's liability for goods lost or damaged in shipment." A.T. Clayton & Co. v. Missouri-Kansas-Texas R.R., 901 F.2d 833, 834 (10th Cir.1990). Carriers may, pursuant to 49 U.S.C. § 10730, limit their liability. 49 U.S.C. § 11707(c)(4).[3] The Supreme Court has held, as the district court observed, that the limitation on liability extends to claims for consequential damages such as lost profits. Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 29-30 (1936); see also Underwriters at Lloyds of London v. North American Van Lines, 890 F.2d 1112, 1121 (10th Cir.1989) (en banc); Gellert v. United Airlines, 474 F.2d 77, 80 (10th Cir.1973). Thus, as an initial matter, plaintiffs' claim for lost profits and any other consequential damages must fail, assuming UPS properly limited its liability.
 
 
 15
 A carrier must meet four requirements in order to limit its liability: (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his or her choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. Norton v. Jim Phillips Horse Transp., Inc., 901 F.2d 821, 827 (10th Cir.1989). Plaintiffs do not dispute the fact that UPS maintains a tariff within Interstate Commerce Commission guidelines, nor do they argue that they failed to receive a receipt or bill of lading. They argue that they were simply unaware of the liability limitation contained in the tariff and on the UPS Pickup Record-Registers. Indeed, plaintiff Derek Parkhurst's affidavit, attached to plaintiffs Parkhurst's and Horton's answer to UPS' motion for summary judgment, states that he never saw a UPS Pickup Record-Register and the liability limitations contained therein until late May of 1990, a full month after the packages were sent.
 
 
 16
 The tariff on file with the Interstate Commerce Commission provides that, unless the shipper declares in writing that the value of a package exceeds $100.00 and pays an extra fee of $0.25 for each $100 of declared value, the shipper releases UPS from liability for loss or damage in excess of the $100.00. Furthermore, the Pickup Record-Registers contain a pre-printed statement as follows:
 
 
 17
 Unless a greater value is declared in writing on this receipt, the shipper hereby declares and agrees that the released value of each package or article not enclosed in a package covered by this receipt is $100, which is a reasonable value under the circumstances surrounding the transportation.
 
 
 18
 UPS Pickup Record-Register, Doc. 50, Ex. A-2, A-3.
 
 
 19
 Our court has held that signing a bill of lading which contains express reference to limited liability provisions constitutes adequate notice to a shipper and reasonable opportunity to choose between different levels of liability. See Norton, 901 F.2d at 824, 825; Underwriters at Lloyds of London, 890 F.2d at 1114.[4] While plaintiffs argue that they never saw the Pickup Record-Registers, we must assume that someone, either plaintiffs or someone acting as an agent on their behalf, delivered the packages to UPS and declared a value for two packages and apparently declined to declare a value for the third package. The Pickup Record-Registers are entitled to a presumption of regularity, particularly in light of the Butler affidavit stating that they are routinely generated business records. Plaintiffs' unsupported allegation that they were unaware of the specific limitation of liability provision contained in the Registers, despite the evident selection of a declared value by the person delivering the packages and the apparent refusal to select a declared value two days later, and despite plaintiffs' admitted payment for shipment, is insufficient to overcome this presumption of regularity. Thus, plaintiffs, as the nonmoving parties, have failed to present affirmative evidence showing the existence of a disputed issue of material fact. See Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1521 (10th Cir.1992); Tillett v. Lujan, 931 F.2d 636, 639 (10th Cir.1991).
 
 
 20
 The motion for leave to proceed without prepayment of costs or fees is GRANTED. For the foregoing reasons, the judgment of the district court granting summary judgment to UPS is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The district court order stated the values slightly differently. We state the values as plaintiffs alleged them in their complaint. Plaintiffs have not, however, disputed the district court's statement of values
 
 
 [2]
 Plaintiff Don Smith did not sign the notice of appeal filed in this case. However, the notice of appeal named Don Smith as a plaintiff, and specifically stated in the body of the notice that Smith was one of the parties appealing. There were signature blocks for both Parkhurst and Horton, and Parkhurst's signature block indicated he signed "pro se, in behalf of himself and plaintiff Don Smith."
 On March 25, 1992, the clerk of this court sent Parkhurst and Horton a letter stating, "[u]nless Mr. Smith signs pleadings he is not considered an appellant in this case." Smith has filed a "Motion for Corrective Order", seeking an order "acknowledging" him as an appellant.
 This court recently addressed this precise issue, holding that where both a husband's and wife's names appeared in the caption and in the body of the notice of appeal, and the husband's signature block indicated he signed for himself and his wife, the wife's failure to sign the notice did not exclude her from being considered an appellant. "Under Torres [v. Oakland Scavenger Co., 487 U.S. 312 (1988) ], this notice of appeal sufficiently notified the [defendant] and the court of the identities of both [husband and wife] as the appellants." James v. United States of America, 1992 U.S.App. LEXIS 16599, 92 T.C. 389 (10th Cir., July 23, 1992). The notice of appeal in this case similarly notified both UPS and the court that Smith was an appellant. See also Tri-Crown, Inc. v. American Fed. Sav. & Loan Ass'n., 908 F.2d 578, 580 (10th Cir.1990).
 
 
 [3]
 49 U.S.C. § 10730(a) provides that:
 The Interstate Commerce Commission may require or authorize a carrier ... to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper, or by a written agreement, when that value would be reasonable under the circumstances surrounding the transportation.
 
 
 [4]
 Plaintiffs argue the district court erred in concluding that plaintiffs are deemed to have constructive notice of the terms of the tariff on file with the Interstate Commerce Commission. This court has held that "the shipper is charged with knowledge of the terms and conditions of the tariff, particularly if the shipper is experienced." Norton, 901 F.2d at 824 (citing Mechanical Technology, Inc. v. Ryder Truck Lines, Inc., 776 F.2d 1085, 1087-88 (2d Cir.1985)). Even were we to hold that arguably less experienced shippers such as plaintiffs are not on constructive notice of the terms of the tariff, they were on notice of the liability limitation provisions by virtue of the express statement in the Pickup Record-Registers