**NEDLLOYD LINES, B.V. CORP.,**
Plaintiff, Appellant,

v.

**HARRIS TRANSPORT CO., INC.,**
Defendant, Appellee.

No. 90–1590.

United States Court of Appeals,
First Circuit.

Heard Oct. 4, 1990.

Decided Jan. 2, 1991.

Lawrence J. Mullen with whom Timothy R. McHugh and Hoch & McHugh, Boston, Mass., were on brief, for appellant.

Robert G. Parks, Wellesley Hills, Mass., for appellee.

Before CAMPBELL and TORRUELLA, Circuit Judges, and ATKINS,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Plaintiff Nedlloyd, a Dutch shipping company, appeals from the district court's grant of defendant Harris's motion for summary judgment on its breach of contract claim. Because we agree with the district court that Nedlloyd's notice of claim did not meet the requirements of applicable Interstate Commerce Commission ("ICC") regulations, we affirm.

The parties agree on the relevant facts. A Swedish company, ASEA Metallurgical AB, engaged Nedlloyd in June, 1987 to transport a press machine from Grafton, Massachusetts to Bremerhaven, Germany. Because of its size, the press was shipped in three separate loads, the heaviest of these being the frame, which weighed 182,-981 pounds. Defendant Harris Transport Company, a domestic motor common carrier, agreed to transport the three loads from Grafton, Massachusetts to Boston, Massachusetts, from which point they would be shipped to Europe. Harris successfully transported the two lighter loads in late July, 1987. Near the end of July, Harris sent a tractor and trailer to Grafton to pick up the frame. However, when the frame was loaded onto the trailer, the suspension system failed to raise the vehicle to an operable level, and the frame had to be removed.

On or about August 11, 1987, another trucker, allegedly sent by Harris,[1] went to Grafton to pick up the frame. The frame was loaded onto the trailer, and the trucker left for the Boston pier. The next day, the tractor and trailer broke down on Route 93 in Quincy, Massachusetts. The Massachusetts State Police determined that the overweight permit held by the trucker was inadequate and ordered the frame removed from the vehicle and impounded. Nedlloyd subsequently contracted with another shipping company, Hallamore, to transport the

frame from the impoundment lot to the Boston pier. Hallamore delivered the frame near the end of September, 1987, and Nedlloyd paid Hallamore $44,560.64, the amount claimed in its complaint, for its service.

On September 30, 1987, Nedlloyd's Boston agent, Johnson Maritime, sent a notice of claim letter to Harris's representative, Walter Barry. The letter identified the shipment and stated, in relevant part, "We must hold you responsible for failure to obtain proper permits and the resulting penalties and storage." On November 9, 1987, the president of Harris sent a letter to Johnson Maritime, identifying the shipment and denying responsibility. Nedlloyd's attorney sent a second letter dated November 3, 1987, to Harris, which stated:

[Nedlloyd] takes the position that Harris failed to discharge the obligations which it undertook to move the press in failing to obtain the permits and supply the equipment necessary to make the move.

Harris's president claims that he received no further communication concerning the shipment until he was served with a copy of Nedlloyd's complaint on September 16, 1988.

Nedlloyd filed a complaint in the district court on August 31, 1988, claiming $44,-560.64 in damages for breach of contract. Harris counterclaimed for $2,520.26 in unpaid freight bills for the two smaller shipments. After two years of discovery, Harris filed a motion for summary judgment, arguing that Nedlloyd had failed to comply with the requirements for notice of claim against a common carrier set out in the Claim Processing Regulations of the ICC, 49 C.F.R. § 1005. Harris also filed for summary judgment on its counterclaim for unpaid fees. Nedlloyd did not oppose summary judgment on the counterclaim.

The district court ruled that the "claim regulations" issued by the Interstate Commerce Commission and published at 49

---

*Of the Southern District of Florida, sitting by designation.

1. Harris denies that it sent the second trucker and therefore denies responsibility for the unsuccessfully transported load. The district

court found, however, that Harris had issued a Bill of Lading for this shipment. Harris does not base its Motion for Summary Judgment on this contention; therefore, we need not address the issue here.

C.F.R. § 1005.2 provide[d] the applicable "minimum" standards for the contents of a lengthy, sufficient written notice of freight claim. The court determined that Nedlloyd's two letters—the original notice of September 30, 1987, and the letter of November 3, 1987—did not meet that standard because they failed to make claim for a specified or determinable amount in damages. As a result, no adequate claim was filed within the mandatory nine month period as required in the bill of lading.[2] The district court also ruled that Nedlloyd did not come within either of two exceptions that have been recognized as excusing compliance with the section 1005.2 requirements. Accordingly, the district court allowed Harris's motion for summary judgment.

■ The primary issue on appeal is whether timely compliance with section 1005.2 claims requirements is an essential prerequisite to recovery in this legal action. Part 1005 of Title 49 of the Code of Federal Regulations requires that a claimant shipper file within the specified time limits, see note 2, *supra,* a communication in writing containing facts sufficient to identify the baggage or shipment involved, asserting liability for the loss, and making claim for the payment of a specified or determinable amount of money. 49 C.F.R. § 1005.2(b).[3]

While new to this circuit, the issue of the applicability of these ICC regulations to contested claims has been differently decided in other circuits. In *Wisconsin Packing Co. v. Indiana Refrigerator Lines,* 618 F.2d 441 (7th Cir.1980) (en banc), *cert. denied,* 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980), the Seventh Circuit held that the ICC regulations at issue were only intended to apply to those claims that were disposed of voluntarily, the object of the regulations being to expedite claims settlement and to prevent discriminatory manipulation. 618 F.2d at 445. Where, however, the carrier disputed the validity of a claim so that litigation followed, the *Wisconsin Packing* court ruled that the sufficiency of the notice was to be assessed under case law developed prior to the regulations issued by the ICC.[4] These cases would allow recovery without the amount of the claim having been specified. In *Pathway Bellows v. Blanchette,* 630 F.2d 900 (2d Cir. 1980), the Second Circuit disagreed. The *Pathway Bellows* court held that the ICC had not intended to limit the standard in 49 C.F.R. § 1005.2(b) to claims settled voluntarily. Rather, compliance with the Claims Processing Regulations, including the notice provision, is an essential prerequisite to recovery in an action at law.

We agree with the Second Circuit. It is true that the title of Part 1005 refers to "the investigation and *voluntary* disposition of loss and damage claims" (emphasis supplied). However, Section 1005.1 states broadly that the regulations "set forth in this part shall govern the processing of claims for loss, damage, injury, or delay to property transported by or accepted for transportation, in interstate or foreign com-

---

**2.** 49 U.S.C. § 11707(e) provides that a carrier shall provide for a period no shorter than nine months for the filing of claims. Pursuant to this statutory directive, carriers have included in the Uniform Bill of Lading the following provision, prescribed by the Interstate Commerce Commission:

2(b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier ... within nine months after delivery of the property....

**3.** 49 C.F.R. § 1005.2(b) provides in relevant part:

(b) *Minimum filing requirements.* A written or electronic communication (when agreed to by the carrier and shipper or receiver involved) from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or trans-

portation and: (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage....

**4.** The more relaxed standard was articulated by the Supreme Court in *Georgia, Fla. & Ala. Ry. v. Blish Milling Co.,* 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916). Since then, the general standard of *Blish Milling* has been refined somewhat. *See, e.g., Insurance Co. of North America v. Newtowne Mfg. Co.,* 187 F.2d 675 (1st Cir. 1951).

merce by ... [carriers] subject to the Interstate Commerce Act." 49 C.F.R. § 1005.1. This language does not limit the regulations to claims that will be settled voluntarily.

To be sure, the administrative history supports Nedlloyd's assertion that the impetus for the ICC regulations was to discourage discrimination on the part of carriers by facilitating the voluntary settlement of claims. *See Ex Parte No. 263: Rules, Regulations, and Practices of Regulated Carriers with Respect to the Processing of Loss and Damage Claims,* 340 ICC 515 (1972). However, this general purpose is best achieved by applying the regulations to all claims.[5] As the ICC stated when the regulations were promulgated:

> We are persuaded by the record in this proceeding that our regulations should embrace the full range of matters relating to the filing of claims, including a prescription of minimum filing requirements and a consideration of documents that do not constitute claims, and claims for uncertain amounts.

*Ex Parte No. 263, supra,* 340 ICC at 555–56.

Consistent with the above, the ICC regulations impose numerous obligations upon carriers which are triggered by the receipt of a "claim." 630 F.2d at 904 and note 9. As the *Pathway Bellows* court stated,

> Having thus required a carrier to take certain actions once a claim is received, we think it is neither inappropriate nor beyond the authority of the ICC at the same time to provide a carrier with some guidance as to what constitutes a claim so that a carrier may know one when it sees one.

630 F.2d at 904. By defining the responsibilities of both parties for the exchanges of information, this mechanism, when applied to all claims, encourages their voluntary resolution by ensuring that both shipper and carrier have adequate information to evaluate liability and the extent of dam-

ages. The regulations themselves specify that a claim "shall not be voluntarily paid by a carrier" unless filed in accordance with the regulations. 49 C.F.R. § 1005.1(a). Thus, because Nedlloyd's notice of claim failed to specify an amount, Harris could not have voluntarily paid the claim, even if it had been inclined to do so. Permitting an inadequate claim to toll the statute of limitations for the filing of suit would frustrate the regulatory purpose of encouraging voluntary settlement by allowing a shipper to bring an action against a carrier without first providing the carrier the opportunity to pay voluntarily a properly notified claim.

Uniform application of the regulations to all claims protects shippers as well as carriers. If the ICC regulations were held to apply only to uncontested claims, a carrier could control its own obligations under the regulations by deciding whether or not to contest a claim. In other words, once it received an adequate notice of claim, a carrier could choose to settle the claim voluntarily, in which case it would be required to follow the ICC regulations concerning processing and payment. *See* 49 C.F.R. § 1005.3–1005.5. Alternatively, by denying liability, the shipper could avoid the ICC procedure for responding to an adequate claim and force the shipper to file suit. Thus, limiting the applicability of the regulations to voluntarily-settled claims would permit precisely the type of discrimination among claimants that the regulations were intended to address.

■ We hold, therefore, that the ICC regulations apply to contested as well as voluntarily paid claims. Having so concluded, we also agree with the district court that Nedlloyd's communications with Harris failed to meet the regulatory requirements. The two letters filed by Nedlloyd within the specified nine-month period identified the shipment and asserted liability; however, neither letter in any way specified the amount of money claimed.

---

**5.** It has not been argued, nor do we believe, that the ICC lacked the statutory authority to promulgate regulations that would apply to all claims contested or uncontested. For a discussion of the Commission's authority to promulgate the regulations at issue, see *Ex Parte No. 263, supra,* 340 ICC at 542–46.

Nedlloyd's claim for damages is therefore time-barred unless its failure to file a timely notice of claim may be excused under the circumstances of this case.

In *Pathway Bellows*, the Second Circuit suggested two situations in which the failure to file a completed claim within the specified time limit might be excused. *See* 630 F.2d at 905, n. 10. First, failure to file a timely claim might be excused if the shipper was unable, despite the exercise of reasonable diligence, to ascertain the extent of its loss within the claim filing period. *See id.* Nedlloyd has not argued that it comes within this exception. A second exception may apply where conduct on the part of the carrier misled the shipper into believing that the filing of a timely written claim was unnecessary. *See id.* Under such circumstances, the carrier may be estopped from raising inadequacy of the notice of claim as a defense.

In the leading case on such an estoppel, *Perini–North River Associates v. Chesapeake & O. Ry. Co.*, 562 F.2d 269 (3d Cir.1977), the Third Circuit held that an indication on the part of the carrier that the filing requirement had been waived, combined with the carrier's departure from its normal practice of forwarding claim forms to the shipper, misled the shipper as to the necessity of filing a formal claim. Thus, the carrier was not permitted to raise as a defense the shipper's failure to file a timely notice of claim. Here, however, there is no evidence that Harris misled Nedlloyd as to the necessity of a formal claim. In *Perini*, the carrier's representatives specifically advised the claimant's representative that no further written claim need be filed. Here, Harris's president simply denied liability for the shipment and sent Nedlloyd a letter to that effect.

In *R.T.A. Corp. v. Consolidated Rail Corp.*, 594 F.Supp. 205 (S.D.N.Y.1984), a case very similar to this, the district court refused to excuse the shipper's failure to file a timely notice of claim based on the carrier's rejection of the claim. Noting that the ICC requirements apply even if a defendant refuses to settle a claim and judicial resolution is necessary, the court held that "the representation of the defendant, rejecting plaintiff's claim, had no bearing on plaintiff's legal obligations." *Id.* at 211. We agree. If the carrier's simple refusal to pay a claim, without more, were to release the shipper from the ICC requirements, our holding that the requirements apply to contested claims as well as voluntarily settled claims would be rendered meaningless.

Attempting to distinguish the cases in which courts have refused to apply the doctrine of estoppel, Nedlloyd argues that in each case, the carrier either did not reply at all to the inadequate notice of claim or denied liability only orally. *See R.T.A. Corp. v. Consolidated Rail Corp.*, 594 F.Supp. 205 (S.D.N.Y.1984); *General Electric Co. v. Brown Transport Corp.*, 597 F.Supp. 1258 (E.D.Va.1984); *Bobst Division of Bobst Champlain, Inc. v. IML—Freight, Inc.*, 566 F.Supp. 665 (S.D.N.Y. 1983). However, we see little significance in the fact that Harris communicated its denial of responsibility in writing rather than orally. Furthermore, we refuse to hold that Harris would have been better advised to remain silent—such a holding would create an incentive for a carrier to provide less information rather than more.[6]

### CONCLUSION

We agree with the district court that Nedlloyd's notice of claim did not meet applicable ICC requirements and that Nedlloyd's failure to file a timely notice of claim is not excusable under the facts of this case.

*Affirmed. Costs to appellee.*

---

**6.** Because we agree with the district court that Nedlloyd has failed to demonstrate that it was misled by Harris, we need not decide what circumstances, if any, would excuse the untimely filing of a proper written claim.