**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,**

v.

**G.I. TRUCKING CO., et al., Defendants.**

**No. C91–2631 TEH.**

United States District Court, N.D. California.

Dec. 31, 1991.

Kenneth F. Lovett, San Francisco, Cal., for plaintiff.

William D. Taylor, James Attridge, Hanson Bridgett Marcus Vlahos & Rudy, San Francisco, Cal., for defendants.

## ORDER

THELTON E. HENDERSON, Chief Judge.

This matter comes before the court on the defendant's motion for summary judgment, filed with the court on October 15, 1991. The motion came on for oral argument on Monday, December 16, 1991 at 10:00 a.m. After careful consideration of the moving papers, declarations, and oral arguments, the court is satisfied that summary judgment should be GRANTED in favor of the defendants.

### FACTUAL BACKGROUND

Eye Technology contracted with G.I. Trucking to carry a shipment of intraocular lenses from Los Angeles to Calexico, California en route to Mexico. The lenses were insured by INA. On or about April 18, 1988, the lenses were damaged.

On December 2, 1988, approximately eight months after receipt of the damaged lenses, INA sent the following communication to G.I. Trucking:

... This letter is our preliminary notice of loss/damage to the shipment of lenses in the amount of $100,000 (estimate). Please note that we have not yet paid this claim to our insured; as soon as we will make payment to them we will send the final claim to you ...

Declaration of James Attridge, ¶ 5, Exh. D–2. However, no further notice firmly establishing the specific amount of the claim was sent to G.I. Trucking until March 28, 1989, over eleven months after the damaged cargo was delivered.

The plaintiff and defendants represented at oral argument that a reason for the delay in identifying the exact amount of the damage was that after the damage occurred the plaintiff believed that it might be possible to salvage the shipment, at least in part. The parties agreed that the plaintiff made the defendant aware of the intent to attempt to salvage the shipment. In addition, G.I. Trucking had no knowledge of the actual value of the shipment. G.I. Trucking's tariff required that the value of items of extraordinary worth be stated on the bill of lading. Here, the shipper did not do so.

### NATURE OF THE MOTION

The defendants (G.I. Trucking) move for summary judgment, claiming that INA failed to make a legally sufficient claim within the nine month period established under the uniform straight bill of lading, the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707(a), and the regulations promulgated thereunder, 49 C.F.R. § 1035.2, (ICC regulations), and is therefore barred from bringing this action. G.I. Trucking contends that under the terms of the bill of lading at issue and the ICC's regulations, INA was required to make a legally sufficient claim within nine months of receipt of the damaged goods. G.I. Trucking contends that no claim meeting the specificity requirements of the Carmack Amendment, the bill of lading, and the ICC regulations was made until over eleven months after receipt of the damaged goods.

INA contends that its letter of December 2, 1988, received approximately eight months after the April 18, 1988 receipt of the damaged goods, constituted a legally sufficient notice of claim. G.I. Trucking contends that the December 2, 1988 letter did not meet the relevant legal require-

ments under the ICC regulations, the bill of lading, and the Carmack Amendment because it did not state the specific amount of the claim, but gave only an estimate.

The sole issue is whether the December 2, 1988 letter constituted a claim within the meaning of the bill of lading, the ICC regulations and the Carmack Amendment.

## LEGAL STANDARD

Summary judgement is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgement as a matter of law. *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir.1985); Fed.R.Civ.P. 56(c). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* 477 U.S. at 251, 106 S.Ct. at 2511 (citations omitted). In ruling on a summary judgement motion, a court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962).

A party seeking summary judgement bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, she must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Whereas, the moving party can prevail on a motion for summary judgement on an issue for which her opponent will have the burden of proof at trial by merely "pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case" *Id.*

If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" to defeat the motion. *Anderson, supra*, 477 U.S. at 250, 106 S.Ct. at 2511; Fed.R.Civ.P. 56(e).

In this case there is no dispute over the material facts. Therefore, the sole question is whether the moving party is entitled to judgment as a matter of law.

## DISCUSSION

The parties do not dispute that the Carmack Amendment governs this action. Under the Interstate Commerce Commission's regulations, bills of lading must incorporate a "nine-month period within which to file claims with carriers of domestic as well as export traffic as a condition precedent to the recovery for loss, damage, injury or delay to property while in the possession of carriers." 49 C.F.R. § 1035.2. The bill of lading at issue in this action was in compliance with this provision and therefore incorporated the nine-month claims limitations period. The nine month rule is anticipated and sanctioned by the Carmack Amendment. 49 U.S.C. § 11707(e).

There is no question that a failure to file a claim within the nine month period is absolutely fatal to the claim. *Taisho Marine & Fire Ins. Co. v. Vessel Gladiolus*, 762 F.2d 1364, 1369 (9th Cir.1985); *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900 (2d Cir.1980), *cert. den.* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981). Therefore the March 28, 1989 claim, filed over 11 months after receipt of the damaged cargo, cannot be deemed to have been sufficient notice within the terms of the bill of lading. Thus, the sole question is whether the December 2, 1988 correspondence constituted sufficient notice.

The central point of contention is whether it is necessary for the claimant to specify in its notice of claim the specific sum claimed. The December 2, 1988 correspondence contained only an estimate of damages rather than a specific amount.

At page 3 of its opposition, the plaintiff concedes that 49 CFR § 1005.2 sets out the minimum filing requirements for the filing of a cognizable claim, and that subsection (b) of that regulation establishes as a "min-

imum filing requirement" that the communication from the claimant: "(1) Contain[ ] facts sufficient to identify the baggage or shipment . . .; (2) Assert[ ] liability for the loss, damage, injury or delay, and; (3) Mak[e] a claim for the payment of a specified or determinable amount." The defendant points to subsection (d) of the same regulation, which reads:

(d) Claims filed for uncertain amounts. Whenever a claim is presented against a proper carrier for an uncertain amount, such as "$100 more or less," the carrier against whom such claim is filed shall determine the condition of the baggage or shipment involved at the time of delivery by it . . . and shall ascertain as nearly as possible the extent, if any, of the loss or damage for which it may be responsible. It shall not, however, voluntarily pay a claim under such circumstances unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed in accordance with the provisions of paragraph (b) of this section. 49 CFR § 1005.2(d).

Given that the plaintiff concedes the applicability of subsection (b) of the above regulation, subsection (d) must also be applicable.

It is clear that the December 2, 1988 communication contained facts sufficient to identify the baggage or shipment and asserted liability for the loss, damage, injury or delay. The sole question is whether the estimate of damage was sufficiently specific within the terms of subsections (b) and (d). The plaintiff contends that the estimate of damages of $100,000 was sufficient to satisfy the third requirement. The defendant contends that this estimate was not sufficiently specific under the terms of the regulation.

The overriding purpose of the ICC regulations was "to discourage discrimination on the part of carriers by facilitating the voluntary settlement of claims." *Nedlloyd Lines v. Harris Transport*, 922 F.2d 905, 908 (1st Cir.1991). Prior to the enactment of the regulations, carriers often forced even legitimate claims into lengthy litiga-

tion. The situation resulted in carriers engaging in discrimination between favored and disfavored shippers. "Carriers could admit liability and quickly pay the claims of favored shippers while dragging other shippers, with similar claims, through the long, inconsistent and expensive litigation process. (citation). This form of discrimination was one of the evils the Carmack Amendment sought to eliminate." *General Elec. Co. v. Brown Transport Corp.*, 597 F.Supp. 1258 (E.D.Va.1984). The ICC regulations required that a carrier would be precluded from collection unless it made an early and specific claim, thereby allowing *any* shipper, large or small, to voluntarily settle a claim without litigation.

Unfortunately, the circuits are divided as to the application of the ICC regulations, with the First and Second Circuits, and several lower courts holding that the ICC's regulations require the claimant to specify a specific dollar sum within the nine month period, while the Seventh Circuit has held that no such specific designation is required. However, the rule of the First and Second Circuits is clearly the majority rule, and it is much more reasonable.

The reasoning adopted by the Second Circuit is discussed clearly by the Southern District Court of New York in a case remarkably similar to the one at bar. In *Bobst Division v. IML Freight, Inc.*, 566 F.Supp. 665 (S.D.N.Y.1983), the court passed upon the sufficiency of a letter which read as follows:

Please be advised that the above referenced machine which arrived in Port Newark on or about December 26, 1977, was found to be damaged. The estimated amount of damage is approximately $100,000.00.

By notice of this letter, we hold your company liable for said damages. A claim will be filed on our behalf by our insurance company, who will contact you regarding this shipment.

The *Bobst* court held that the statement, "The estimated amount of damage is approximately $100,000.00," did not constitute a claim for a "specified amount," or a "determinable" amount. *Id.* at 669. The

*Bobst* court noted the similarity of such a claim to the example of an insufficient claim given in the ICC regulations, which refer to a claim "for an uncertain amount such as $100 more or less ..." Id., citing 49 CFR § 1005.2(d). As such, the *Bobst* court held that the claim at issue was for an "uncertain amount," and could not "be regarded as constituting compliance with the minimum filing requirements contained in subsection (b) [of 49 CFR 1005.2]." Id.

The claim at issue in the case at bar is virtually indistinguishable from the claim in *Bobst*. In the December 2, 1988 letter, INA informed G.I. Trucking of a claim for an "amount of $100,000 (estimate)." As if to emphasize the uncertainty of this estimate, the same paragraph in the December 2 letter continued, "Please note that we have not yet paid this claim to our insured; as soon as we will make payment to them we will send the final claim to you." Furthermore, after the damage the plaintiff had informed G.I. Trucking that it was examining the possibility of salvaging the damaged lenses, which might have substantially mitigated the damages. Clearly, under the rationale of the *Bobst* court, the plaintiff's December 2nd claim was for an "uncertain amount," and did not constitute a legally sufficient claim within the requirements of the ICC regulations. The letter was not sufficient to inform the defendants of the specific amount of the claim.

The *Bobst* decision flowed directly from the Second Circuit's conclusion in *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 904 (2d Cir.1980), that the ICC regulations "provide the appropriate standard for assessing the sufficiency of all claims ..." The *Pathway Bellows* court held that a claim letter that "failed to claim a specified or ascertainable amount of money as damages" was insufficient under the ICC regulations, and therefore precluded recovery of damages. Id. at 903.

The First Circuit has applied the same rule. In *Nedlloyd Lines v. Harris Transport*, 922 F.2d 905 (1st Cir.1991), the court held that the plaintiff was barred from recovering damages because although it

filed two claims within the nine month period, neither specified the amount of money claimed. Id. at 908. The First Circuit explained that the purpose of the ICC regulations was to encourage voluntary resolution of shipping damage disputes "by ensuring that both shipper and carrier have adequate information to evaluate liability and the extent of damages." The court found that the plaintiff's failure to specify an amount claimed undermined this purpose: "Nedlloyd's notice of claim failed to specify an amount, Harris could not have voluntarily paid the claim, even if it had been inclined to do so." The court found the plaintiff's claim therefore to be barred, and held that to allow the action to proceed would "frustrate the regulatory purpose of encouraging voluntary settlement ..." Id. at 908.

The Eastern District Court of Virginia, after engaging in a detailed discussion of legislative history, also concluded that the ICC regulations apply to disputed as well as voluntarily settled claims and require the plaintiff to submit a claim for a specific dollar amount within the nine month period. *General Elec. Co. v. Brown Transport Corp.*, 597 F.Supp. 1258 (E.D.Va. 1984); *see also, Calpro Co. v. Consolidated Engineering Co.*, 502 F.supp. 707, 713–14 (N.D.Ga.1980); *R.T.A. Corp. v. Consolidated Rail Corp.*, 594 F.Supp. 205, 209–10 (S.D.N.Y.1984).

█ The plaintiff, however, points to the *en banc* decision of the Seventh Circuit in *Wisconsin Packing Co. v. Indiana Refrigerator Lines*, 618 F.2d 441 (7th Cir.1980) (en banc). In that case the Seventh Circuit acknowledged that a purpose of the ICC regulations was to facilitate settlement. However, the *Wisconsin Packing* court reasoned that this purpose was only relevant for claims which were voluntarily settled, and was irrelevant for litigated claims. Id. at 445. Where the claim is litigated, the Seventh Circuit held that the sufficiency of the claim was to be assessed under the case law developed prior to the issuance of the ICC regulations. These cases would allow recovery without the amount of the claim having been specified. Id. The Sev-

enth Circuit reasoned that a primary purpose of the notice requirement was to expeditiously inform the shipper of any claims so that the claims could be researched while recollections were fresh. Notice of the precise amount of the claim was not necessary to serve this purpose, but only notice sufficient to allow the shipper to investigate the claim. Therefore, the Seventh Circuit held that the ICC regulations did not govern the sufficiency of claim notices in litigated claims.

The Seventh Circuit's reasoning is clearly the minority rule. The *Wisconsin Packing* decision has been widely criticized on the ground that the purpose of the ICC regulation is to encourage settlement of all claims, not just some, and claims are much more likely to settle if a precise dollar sum of the claim has been established. Under the Seventh Circuit's reasoning, a shipper could simply refuse to claim a precise dollar sum, thereby forcing litigation and avoiding the requirements of the ICC regulations altogether. There is no apparent rationale in either the language or purpose of either the ICC regulations or the Carmack Amendment to suggest that the regulations are to apply only to voluntarily settled claims and not to litigated claims. As the First Circuit noted in *Nedlloyd:*

> Uniform application of the regulations to all claims protects shippers as well as carriers. If the ICC regulations were held to apply only to uncontested claims, a carrier could control its own obligations under the regulations by deciding whether or not to contest a claim. In other words, once it received an adequate notice of claim, a carrier could choose to settle the claim voluntarily, in which case it would be required to follow the ICC regulations concerning processing and payment ... Alternatively, by denying liability, the shipper could avoid the ICC

procedure for responding to an adequate claim and force the shipper to file suit. Thus, limiting the applicability of the regulations to voluntarily-settled claims would permit precisely the type of discrimination among claimants that the regulations were intended to address."

In addition to the First Circuit, *Wisconsin Packing* has been expressly rejected for similar reasons by the Second Circuit, *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900, 903–04 (2d Cir.1980) ("we do not believe that the dual standards for assessing the sufficiency of claims, depending upon whether the carrier voluntarily decides to settle a claim or to contest its liability, were either intended or mandated."); the Southern District of New York, *Bobst Division v. IML Freight, Inc.,* 566 F.Supp. 665 (S.D.N.Y.1983) and *R.T.A. Corp. v. Consolidated Rail Corp.,* 594 F.Supp. 205, 209 n. 7 (S.D.N.Y.1984) (rejecting Seventh Circuit rule and citing numerous courts which have followed the Second Circuit); the Northern District of Georgia, *Calpro Co. v. Consol. Engineering Co.,* 502 F.Supp. 707, 712 (N.D.Ga.1980) (rejecting the Seventh Circuit rule and noting the "every other federal district or appellate court to consider the question of the I.C.C. regulations' scope has reached the opposite conclusion"); and the Eastern District of Virginia, *General Elec. Co. v. Brown Trans. Corp.,* 597 F.Supp. 1258 (E.D.Va. 1984) ("the Court is of the opinion that the Seventh Circuit's voluntary/involuntary distinction was neither intended nor mandated by the ICC regulations.")

Moreover, as noted by the Second Circuit, the plain language of the ICC regulations state their application to "the full range of matters relating to the filing of claims ..." *Pathway Bellows,* 630 F.2d at 904 n. 7, quoting 40 CFR § 1005.1.[1] This

---

**1.** The ICC regulations at issue state:

We are persuaded by the record in this proceeding that our regulations should embrace the full range of matters relating to the filing of claims, including a prescription of minimum filing requirements and a consideration of documents that do not constitute claims, and claims for uncertain amounts ...

Thus, the rules set forth in sections 1005.1 and 1005.2 ... first establish their overall applicability and then set out the manner and form in which loss and damage claims must be filed by claimants in order to accomplish the improvements shown to be required in the public interests in this area.

*Ex Parte No. 263: Rule, Regulations, and Practices of Regulated Carriers with Respect to the*

court is in agreement with the First Circuit and Second Circuits that "the ICC regulations apply to contested as well as voluntarily paid claims." 922 F.2d at 908.

The plaintiff points out that the Ninth Circuit in *Taisho Marine & Fire Ins. Co. v. Vessel Gladiolus*, 762 F.2d 1364, 1368 (9th Cir.1985) relied upon *Wisconsin Packing*, in holding that "The form of the written notice is less important than its adequacy in apprising the carrier of the basis for the claim and of the fact that reimbursement will be sought." This court notes that the Ninth Circuit's citation to *Wisconsin Packing* was mere *dicta*, and as such is not binding upon the court. The plaintiff ignores the outcome of *Taisho*, in which the court held that the plaintiff could *not* maintain its claim because of late filing. The *Taisho* decision turned on the fact that the notice in that case was insufficient because it was not timely, a matter about which their is no division among the circuits. The *Taisho* court did not specifically address the question now before this court, that is, whether the notice of claim must state a specific dollar sum. In addition, the Ninth circuit in *Taisho* did not even address the Second Circuit's, or any other court's criticism of the Seventh Circuit's *Wisconsin Packing* decision. Under the circumstances, it is clear to this court that the Ninth Circuit, in the cited dicta from *Taisho*, did not directly address the question now before the court, and did not intend to direct the lower courts to follow the Seventh Circuit's *Wisconsin Packing* rule. This case clearly illustrates the problem of dicta and the reasons that it does not create binding precedent.

The plaintiff also cites *Culver v. Boat Transit, Inc.*, 782 F.2d 1467 (9th Cir.1986). However, *Culver* actually weighs in favor of the defendant. The *Culver* court cited the Ninth Circuit's decision in *Northern Pac. Ry. v. Mackie*, 195 F.2d 641 (9th Cir. 1952), which required strict compliance with the written claim notice requirements, and noted the apparent conflict between *Taisho* and *Mackie*. However, *Culver* resolved the conflict by substantially limiting

*Taisho*'s application. ("*Taisho* simply relaxed the need for a formal claim in limited situations.") *Culver*, 782 F.2d at 1469. In remanding the case and reversing the trial court's grant of summary judgment against the plaintiff, the *Culver* court expressly noted that "there was notation on the bill of lading noting the damage caused by the accident." 782 F.2d at 1469 n. 2. Therefore, the parties in *Culver* had exactly the information concerning the amount of damages which the parties in the instant action lacked. The *Culver* court reaffirmed the strict notice requirements of *Mackie*, even in the face of *Taisho*, thereby undermining the plaintiff's case.

This court finds the reasoning of the First and Second Circuits to properly state the law. We therefore find that the ICC regulations establish the proper standards for evaluating the sufficiency of all claims. In this case, it is clear in light of *Bobst*, *Pathway Bellows*, *Nedlloyd*, and *Brown Transport* that the December 2, 1988 claim letter was not sufficiently specific within the terms of the ICC regulations. Therefore, it is clear that the plaintiffs are barred from proceeding with this action. *Pathway Bellows*, *supra; Nedlloyd Lines*, *supra.*

The parties do not dispute the facts which are material to this motion for summary judgment. Plaintiff's opposition to defendants motion to dismiss at 2. Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgement as a matter of law. *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir.1985); Fed. R.Civ.P. 56(c). Since it is clear that on the undisputed facts the defendant is entitled to judgment as a matter of law, summary judgment should be GRANTED.

For the foregoing reasons and in accordance with the above, after careful consideration of the submissions and written and oral arguments of the parties, and good cause appearing therefor, IT IS HEREBY ORDERED that:

*Processing of Loss and Damage Claims*, 340    I.C.C. 515 (1972).

1. Summary judgment is GRANTED in favor of the defendants.

IT IS SO ORDERED.