Mary L. CLAIR a/k/a Mary L. Latos, D.O., Plaintiff,

v.

**EMRICK'S VAN AND STORAGE COMPANY and Central States Thermo King of Oklahoma, Inc., and Robert Flinn Moving and Storage Company, and Travelers Insurance Company, Defendants.**

Mary L. Clair, a/k/a Mary L. Latos, D.O., Plaintiff,

v.

**Allied Van Lines, Inc., Defendant.**

Nos. CIV–97–1461–W, CIV–97–1465–W.

United States District Court, W.D. Oklahoma.

Jan. 26, 1999.

John B. Monnet, Oklahoma City, OK, for Mary L. Clair.

James L. Hill, Henry Davidson & Hill, Oklahoma City, OK, for Allied Van Lines, Inc., Emrick's Van and Storage Company, and Robert Flinn Moving and Storage Company.

Ann E. Allison, Rhodes Hieronymus Jones Tucker & Gable, Tulsa, OK, for Central States Thermo King of Oklahoma, Inc.

William D. Greenwood, D. Renee Skodak, Huckaby Fleming Frailey Chaffin Cordell Greenwood & Perryman, Oklahoma City, OK, for Travelers Insurance Co.

## *ORDER*

LEE R. WEST, District Judge.

This matter comes before the Court on the Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment filed by defendants Allied Van Lines, Inc. (Allied), Emrick's Van and Storage Company (Emrick) and Robert Flinn Moving and Storage Company (Flinn) pursuant to Rule 56, F.R.Civ.P. Plaintiff Mary L. Clair a/k/a Mary L. Latos, D.O., has responded to the motion and the defendants have filed a reply. Based upon the record, including the following undisputed facts,[1] the Court makes its determination.[2]

1. Allied is engaged in the nationwide business of transporting household goods. Contracting for Allied's services is accomplished through local agents, such as Emrick, which is located in Oklahoma City, Oklahoma, and Flinn, which is located in Naples, Florida. The actual transport is accomplished by licensed drivers, who are independent contractors for the various Allied agents.

2. Clair contracted with Flinn to move her household goods from Fort Myers Beach, Florida, to a house, then owned by Clair's son, Robert Clair, in Yukon, Oklahoma.

3. Through Flinn, Clair, in turn, entered into a contract with Allied by Clair's execution on March 27, 1996, of an "Order for Service" and a "Household Goods Bill of Lading and Freight Bill" (Bill of Lading).

4. The Order for Service read in part that Clair's household goods would be loaded on April 5, 1996, in Fort Myers Beach, Florida,

---

1. In her response, Clair "adopted" thirteen (13) of the seventeen (17) undisputed facts set forth by the defendants. Because Clair did not comply with Rule 56.1(c), Rules of the United States District Court for the Western District of Oklahoma, the Court has deemed admitted the remaining six facts set forth by the defendants.

2. Although the instant motion challenges only Clair's claims against Allied, Flinn and Emrick, defendant Travelers Insurance Company (Travelers) has also responded. Upon review of this response, the Court advises the parties that it does not address the liability of Travelers, if any, to Clair in this Order. The Court also notes that Travelers has requested in a footnote that it be allowed to amend its cross-claim. Unless and until Travelers' request to amend is submitted in accordance with the applicable Federal Rules of Civil Procedure and the Rules of the United States District Court for the Western District of Oklahoma, the Court does not intend to address the same.

and delivered to Yukon, Oklahoma, on or about April 13, 1996.

5. Clair indicated on the Order for Service that the shipment had a value of $45,000.00 and she marked that part of the document that read "Optional: Extra Care Protection Pledge."

6. Clair selected that option because she wanted protection consisting of repair or replacement of her household goods in the amount of $45,000.00, which she thought would be over and above any existing and applicable homeowner's insurance coverage.

7. Clair discussed valuations with Flinn representative Peter Flinn and although knowing she could select a higher level of coverage, agreed upon the $45,000.00 figure because she thought it was reasonable at the time.

8. Clair reviewed the Order for Service before she signed it and she was aware of the provisions of the Extra Care Protection Pledge.

9. Peter Flinn surveyed Clair's household goods so he could quote Clair the cost of the move. A price was set forth in the Guaranteed Price Pledge signed by Peter Flinn on March 27, 1996.

10. By her signature on the Order for Service, Clair acknowledged that she had received the following documents: "Your Rights and Responsibilities When You Move, Including Allied's Complaint & Inquiry Handling Procedure," "Dispute Settlement Program" and Allied's Annual Performance Report.

11. On April 8, 1996, a driver loaded a majority of Clair's household goods onto a trailer. He listed the goods on a form entitled "Household Goods Descriptive Inventory" and Clair signed it. When the goods were delivered to Yukon, Oklahoma, on April 13, 1996, Robert Clair likewise signed the form.

12. The remainder of Clair's household goods, which had an approximate weight of 4540 pounds, was eventually loaded onto a second trailer on April 9, 1996, and transported from Florida to Oklahoma.

13. This second trailer arrived on April 15 or 16, 1996, at Emrick. Because delivery to the designated location could not be accomplished, the trailer was taken to defendant Central States Thermo King of Oklahoma (Central States), where it was subject to a required Department of Transportation inspection.

14. On April 18, 1996, a Central States employee noticed a crack in the middle deck box of the trailer and he attempted to weld it. During the welding process, the contents of the trailer ignited.

15. After the fire, Clair contacted Harvey Washington, an Allied claims adjuster, regarding her loss. Nine forms, each entitled "Presentation of Loss and Damage Claim Form," were forwarded to Clair. On July 24, 1996, Clair returned to Allied one page of the nine claim forms, on which Clair had written: "Shipment Never Delivered. Inventory in Progress." No other information was sent by Clair to Allied during 1996 or 1997.

16. Clair gave counsel for Allied the completed forms at her deposition on November 23, 1998.

17. Clair testified at the deposition that she did not return the completed claim forms to Allied because she first wanted to resolve any claims she had against her homeowner's insurance carrier, defendant Travelers Insurance Company (Travelers).

Clair brought suit against Allied, Flinn, Emrick, Central States and Travelers and in her amended complaint, she alleged a claim for breach of contract against Flinn, Allied and Emrick and a claim of negligence against Emrick.

■ These three defendants have first argued that Clair's claims are preempted by federal law. Clair does not argue to the contrary. The Court therefore finds Clair's claims for breach of contract and negligence are preempted by the Carmack Amendment to the Interstate Commerce Act, *e.g., Underwriters at Lloyds of London v. North American Van Lines*, 890 F.2d 1112 (10th Cir. 1989), and holds that Clair's rights and obligations and these defendants' obligations and liabilities will be determined in accordance

with the Carmack Amendment and case law interpreting the same.

■ Allied, Flinn and Emrick have further argued that Clair's claims are barred because she failed to comply with certain notice provisions.

Title 49, section 14706(e)(1) of the United States Code provides that

"[a] carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than two years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice."

49 U.S.C. § 14706(e)(1).

The backside of each and every page of the Bills of Lading, which Clair signed, contained the following language:

"SECTION 6. As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after delivery to consignee as shown on face hereof, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid."

The claim forms sent by Allied to Clair caution the claimant "[b]efore completing this form [to] read [the] attached instructions." The instructions provide in pertinent part that the claimant, *inter alia*, is to indicate the declared value of the shipment, to describe the articles lost or damaged, to list the weight of each article, to list the purchase price and replacement price of each article and to set forth the dollar amount claimed.[3]

The Interstate Commerce Commission (ICC) has promulgated regulations which "govern the processing of claims for loss . . . [of or] damage . . . to property transported . . . in interstate . . . commerce, by . . . [common carriers]." 49 C.F.R. § 1005.1 (1998). These regulations provide in part that "[a] claim for loss or damage . . . to cargo[ ] shall not be voluntarily paid by a carrier unless filed, as provided in . . . [title 49, section 1005.2(b) of the Code of Federal Regulations], with the . . . carrier . . . . *Id.* § 1005.2(a)."

Section 1005.2(b) sets forth the minimum filing requirements and provides that

"[a] written . . . communication . . . from the claimant, filed with a proper carrier within the time limits specified in the bill of lading . . . and: (1)[c]ontaining facts sufficient to identify the . . . shipment . . . of property, (2) asserting liability for alleged loss . . . and (3) making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading . . . ."

*Id.* § 1005.2(b).

As the United States Court of Appeals for the Fifth Circuit has noted, the majority of courts which have addressed the issue require "strict compliance with the applicable filing regulations . . . ." *Salzstein v. Bekins Van Lines, Inc.,* 993 F.2d 1187, 1189–90 (5th Cir.1993) (citations omitted).[4] Clair's one-

---

**3.** In the document entitled "Your Rights and Responsibilities When You Move," which is prepared by the Federal Highway Administration and furnished by Allied, customers are told:

"Should your move result in loss or damage to any of your property, you have the right to file a claim with the mover to recover money for such loss or damage."

"You have nine months following either the date of delivery, or the date on which the shipment should have been delivered, to file a claim. However, you should file a claim as soon as possible . . . ."

**4.** The United States Court of Appeals for the Ninth Circuit has adopted a substantial compliance rule as opposed to the strict compliance rule for the minimum filing requirements adopted by the United States Court of Appeal for the First, Second and Fifth Circuits. *Compare*

page claim did not comply with either Allied's written Instructions or the ICC regulations in that the document failed to set forth a request for payment of "a specified or determinable amount of money," 49 C.F.R. § 1005.2(b), for the damaged property.

Because Clair did not submit a claim which met the minimum filing requirements within the nine-month period,[5] her claims against Allied, Flinn and Emrick are barred and she is not entitled to any relief from these three defendants for the loss of, or damage to, her household goods which are the subject of this lawsuit. *E.g., Salzstein,* 993 F.2d at 1190–91.

Accordingly, the Court GRANTS the Motion for Summary Judgment filed by Allied, Flinn and Emrick on December 31, 1998.[6]

---

*Insurance Company of North America v. G.I. Trucking, Co.,* 1 F.3d 903 (9th Cir.1993)(holding reasonable estimate of claim amount satisfied filing requirements), *with Nedlloyd Lines, B.V. Corp. v. Harris Transport Co.,* 922 F.2d 905 (1st Cir.1991), *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900 (2d Cir.1980), and *Salzstein v. Bekins Van Lines, Inc.,* 993 F.2d 1187 (5th Cir. 1993). Despite Clair's reliance on Ninth Circuit case law, the Court finds Clair did not even substantially comply with the minimum filing requirements within the designated time period. Furthermore, the Court finds no merit to Clair's argument that it "would have been relatively easy for the defendants to ascertain to a certain extent ... an approximate value." Response (January 19, 1999) at 3.

**5.** Clair has argued that completion of the claim forms was not necessary since she and Robert Clair had been in contact with Washington. The Court finds no conduct on Washington's part that would relieve Clair of the obligation to submit a completed claim form within the allotted time.

In her deposition, Clair was asked the following questions and she gave the following answers:

"Q. So you contacted Mr. Washington, and you said, 'Why have you not settled up my claim?'

A. 'That you were at the scene, why have you not settled my claim?'

Q. Okay. What did he say?

A. Well, actually, I expected to hear from Allied and I hadn't, so this was my frame of mind, 'Why have you not settled my claim?' He said, 'You haven't made one.' And so he said, 'I gave your-I gave your son the claim forms-I've already given your son the claim forms, but I will send you-I'll send you some more.' So in the mail in a few days, I got Allied claim forms and I made out the sheet which I have given you today which you probably already have yourself."

Deposition of Mary Clair at 225, lines 10–24.

"Q. Okay. Why did you not ever complete these [claim forms] and send them back to him in 1996?

A. My inventory was still in progress.

. . . .

"Q. Let me clarify that. In 1996 Mr. Washington with Allied had a conversation with you and told you that he was going to send you-

A. Claim forms.

. . . .

Q. And he sent them to you?

A. That's right.

Q. But you never completed them and sent them back to him. Is that a correct statement?

A. I've-I'm completing them and I'm giving them to you."

*Id.* at 229, line 5 to 230, line 9.

In an affidavit, Robert Clair has stated that Washington did contact him, that Allied inventoried the contents of the trailer after the fire and that Allied has maintained possession and control of the contents since that time.

**6.** The parties are advised that a judgment under Rule 58, F.R.Civ.P., will not be entered reflecting the Court's disposition of Clair's claims against Allied, Flinn and Emrick until such time as all claims and cross-claims have been resolved.